STATE OF NORTH CAROLINA v. MICHAEL LYNN HOLMES AND LAURA MARIE
AUTRY HOLMES

No. 9412SC499

(Filed 5 September 1995)

### 1. Criminal Law § 326 (NCI4th)— joinder of cases against mother and son—defendants not prejudiced

The trial court's joinder for trial of defendant son's substantive trafficking offenses with defendant mother's conspiracy offense did not deprive each of them of a fair trial in light of the structure of the trial and the limiting instructions given during testimony. N.C.G.S. § 15A-926(b)(2).

**Am Jur 2d, Actions § 137.**

### 2. Criminal Law § 304 (NCI4th)— one defendant—two charges involving drug dealing—consolidation proper

The trial court did not err in consolidating for trial the charge of conspiracy to traffic in controlled substances and the charge of substantive trafficking against one defendant. N.C.G.S. § 15A-926(a).

**Am Jur 2d, Actions § 137.**

**Consolidated trial upon several indictments or informations against same accused, over his objection. 59 ALR2d 841.**

### 3. Criminal Law § 412 (NCI4th)— facts misstated in opening statement—no curative instruction given—defendants not prejudiced

The trial court did not abuse its discretion by failing to give a curative instruction when the prosecutor in her opening statement incorrectly indicated an overlap between drug conspiracy charges against both defendants and a drug trafficking charge against one defendant since it was not until after the completion of all opening statements that an objection was raised to the prosecutor's remark; defense counsel requested a curative instruction at that time; the judge responded that he would have to rule on the evidence as it came in; and the court later gave general clarifying instructions.

**Am Jur 2d, Trial § 522.**

**4. Criminal Law § 720 (NCI4th)— incorrect instruction on conspiracy given before opening statements—defendants not prejudiced**

The trial court did not commit plain error when it misinstructed the jury on conspiracy law prior to evidence being presented, since the instruction in question was given to the jury before opening statements to assist the jury in listening to the opening statements of counsel and the evidence; neither defendant objected at the time the instruction was given; the jury charge at the close of all evidence correctly stated the law on conspiracy and resolved any confusion that might have occurred as a result of the court's earlier statement; and an improper instruction later corrected is completely lacking in prejudicial effect.

**Am Jur 2d, Appellate Review § 743.**

**5. Evidence and Witnesses § 2983 (NCI4th)— prior bad acts of witnesses—admission of evidence—no error**

There was no merit to defendants' contention that the trial court erred by allowing into evidence testimony of the prior bad acts of witnesses in violation of N.C.R. Evidence 404, since that rule is applicable only to parties and not to witnesses. N.C.G.S. § 8C-1, Rule 404.

**Am Jur 2d, Witnesses § 969.**

**Admissibility of evidence of commission of similar crime by one other than accused. 22 ALR5th 1.**

**Admissibility, under Rule 404(b) of Federal Rules of Evidence, of evidence of other crimes, wrongs, or acts not similar to offense charged. 41 ALR Fed. 497.**

**6. Evidence and Witnesses § 2618 (NCI4th)— instruction on marital privilege—defendants not prejudiced**

Defendants were not prejudiced by the trial court's instruction with regard to the marital privilege where defendants requested the instruction and did not object at trial.

**Am Jur 2d, Witnesses § 309.**

**7. Criminal Law § 374 (NCI4th)— explanation of evidentiary rulings—no expression of opinion**

The trial court's explanations of its rulings on evidentiary matters did not constitute impermissible expressions of opinion on the evidence.

**Am Jur 2d, Trial § 284.**

**8. Narcotics, Controlled Substances, and Paraphernalia § 220 (NCI4th)— trafficking by sale and trafficking by delivery— consecutive sentences—no double jeopardy**

Defendant's consecutive sentences for trafficking by sale and trafficking by delivery did not violate double jeopardy.

**Am Jur 2d, Drugs, Narcotics, and Poisons §§ 27, 27.15.**

**9. Criminal Law § 1133 (NCI4th)— aggravating factor of being leader in charged crimes—no error**

In a prosecution of defendants for conspiracy to sell cocaine and trafficking in cocaine, the trial court did not err in sentencing defendants to the maximum allowable sentences by finding that each was a leader in the charged crimes. N.C.G.S. § 15A-1340.4(a)(1)(a) (1988).

**Am Jur 2d, Criminal Law § 599.**

**10. Criminal Law § 788 (NCI4th)— instructions not repeated for codefendant—codefendant not prejudiced**

Defendant mother was not deprived of a fair trial despite the court's decision not to repeat the entire instruction on conspiracy, having just given it for defendant's son.

**Am Jur 2d, Trial § 1144.**

Appeal by defendants Michael Lynn Holmes and Laura Marie Autry Holmes from judgments entered 13 October 1993 by Judge E. Lynn Johnson in Cumberland County Superior Court. Heard in the Court of Appeals 31 January 1995.

*Attorney General Michael F. Easley, by Associate Attorney General William B. Crumpler, for the State.*

*Yurko & Cogburn, P.A. by Lyle J. Yurko and Max O. Cogburn, Jr., and Cutter, Wells & Porter, P.A. by John H. Cutter III for defendant-appellants Michael Lynn Holmes and Laura Marie Autry Holmes.*

McGEE, Judge.

In 1992 defendant Michael Lynn Holmes (hereinafter Michael) was indicted for trafficking in a controlled substance by possession, by sale, by delivery, and by transportation in violation of N.C. Gen.

STATE v. HOLMES

[120 N.C. App. 54 (1995)]

Stat. § 90-95(h)(3)(c). He was also indicted for conspiracy to traffic in a controlled substance in violation of N.C. Gen. Stat. §§ 90-95(1) and 90-95(h)(3)(a). Defendant Laura Marie Autry Holmes (hereinafter Marie) was indicted for conspiracy to traffic in a controlled substance in violation of N.C. Gen. Stat. §§ 90-95(1) and 90-95(h)(3)(a). The State's motions for joinder of defendants for trial and joinder of Michael's offenses were granted and a joint trial was held.

During the trial the State first presented approximately eight days of testimony relating to Michael and Marie's joint conspiracy charge. The State's evidence tended to show that the sale of cocaine was a family business in which Vinston Holmes (the father), Marie (the mother), and Michael (the son) participated. During the conspiracy period from 6 August 1988 through 18 August 1990, Vinston Holmes (hereinafter Vinston) was the central figure in the family drug business. Michael participated by retrieving cocaine and delivering it to the buyer for his father, and selling cocaine when Vinston was not available. Marie's participation was primarily collecting and counting the money from cocaine sales, although on occasion she also sold cocaine.

Cocaine transactions were generally conducted at Holmes Garage, where the family also ran an auto repair shop. Rosa Elaine Ashford, the bookkeeper for Holmes Garage, testified she assisted in the laundering of money from the Holmes family cocaine business by falsifying records for the garage, first at the direction of Vinston, and later as instructed by Michael and Marie. Ashford frequently purchased cocaine from Vinston until the end of 1989 when Vinston decided to stop selling smaller quantities and began selling kilograms (referred to as kilos) because there was "too much traffic at the garage." She testified that from 1988 through 1990 she often observed the activities of drug dealers who came to the garage to purchase cocaine. She also testified about specific instances when she saw Michael sell cocaine and Marie handle the cocaine money.

Drug dealers Russell Butler, Gloria Jones, Belinda Melvin and Darryl Jones testified about specific contact they had with Vinston, Michael and Marie during the conspiracy period. Their testimony tended to show that cocaine purchases were sometimes made directly from Michael and on at least one occasion from Marie. Michael often retrieved the cocaine for buyers at Vinston's direction. Each of the dealers testified about one or two occasions when they

observed Marie handle the money from cocaine sales, either by collecting or counting it.

Kimberly Johnson, Michael's ex-wife, testified that on one occasion before the conspiracy period she helped Michael tape a large sum of money to his body before he flew to an unknown destination. On another occasion in the fall of 1988, she saw Michael and Marie counting large stacks of money.

Ezumer Palmer testified about his drug operation in Georgia and his dealings with Vinston and Michael. In the summer of 1988, Vinston, Michael and Ezumer Palmer met to discuss arrangements to purchase cocaine from Ezumer Palmer. During that summer an unnamed man from Vinston's operation drove to Georgia on two occasions and picked up a total of ten kilos of cocaine, and on another occasion Michael personally went to Georgia and purchased eight kilos of cocaine.

The State next presented approximately two days of testimony relating to Michael's separate drug trafficking charges. Cleo Spears testified that in November 1990 he went to Fayetteville, North Carolina and purchased five kilos of cocaine from Michael at Holmes Garage.

Mark Francisco, an agent of the North Carolina State Bureau of Investigation, testified that Cleo Spears had been under surveillance since his arrival in Fayetteville. Spears was stopped on his way out of town by SBI agents who discovered five kilos of cocaine in his truck. Upon his arrest Spears told the agents he had purchased the cocaine from Michael.

Neither defendant offered any evidence.

The jury found defendant Michael Holmes guilty of the substantive trafficking charges and conspiracy to traffic in a controlled substance. The jury also found defendant Marie Holmes guilty of conspiracy to traffic in a controlled substance. Michael appeals from a judgment imposing a prison sentence of five consecutive forty-year terms and a fine of $250,000. Marie appeals from a judgment imposing a forty-year prison sentence and a $250,000 fine.

Michael identifies 292 assignments of error within ten issues for this Court to consider. Marie sets forth 191 assignments of error within nine issues. A number of these issues are identical for both

Michael and Marie, and where appropriate, we have combined discussion of both defendants' issues.

## I. Joinder of Defendants

[1]  Both defendants argue the trial judge's joinder for trial of Michael's substantive trafficking offenses with Marie's conspiracy offense deprived each of them of a fair trial. We disagree.

Joinder of defendants for trial is provided for in N.C. Gen. Stat. § 15A-926(b)(2) (1988):

Upon written motion of the prosecutor, charges against two or more defendants may be joined for trial:

a. When each of the defendants is charged with accountability for each offense; or

b. When, even if all of the defendants are not charged with accountability for each offense, the several offenses charged:

1. Were part of a common scheme or plan; or

2. Were part of the same act or transaction; or

3. Were so closely connected in time, place, and occasion that it would be difficult to separate proof of one charge from proof of the others.

At trial defendant Marie conceded the propriety of joinder of the conspiracy charges. However, she argues that since she is not accountable for Michael's substantive trafficking offenses, her case does not comply with G.S. § 15A-926(b)(2). Joinder of defendants is within the trial court's discretion and will not be disturbed absent a showing that joinder deprived the defendant of a fair trial. *State v. Wilson*, 108 N.C. App. 575, 589, 424 S.E.2d 454, 462, *appeal dismissed and disc. review denied*, 333 N.C. 541, 429 S.E.2d 562 (1993). "A defendant may be deprived of a fair trial where evidence harmful to the defendant is admitted which would not have been admitted in a severed trial." *Id.* Marie contends she was prejudiced by having to sit through testimony relating to Michael's substantive trafficking charges at the close of presentation of evidence on her conspiracy charge. In support of her argument she cites *Wilson* in which this Court held that the joinder of charges for trial against the co-defendants was prejudicial and deprived one defendant of a fair trial. 108 N.C. App. at 589, 424 S.E.2d at 462. In so holding the Court noted that as a result of joinder, the defendant was "forced to sit through the testi-

mony of eleven witnesses and two and one-half days of trial before any evidence was received as against him." *Id.* Further, the trial court's limiting instructions "did not operate to dispel the resulting prejudice." *Id.*

The case before this Court is distinguishable from *Wilson.* Here, the structure of the trial and the trial court's limiting instructions *did* serve to minimize prejudice, if any, to Marie. The trial was structured so that the jury first heard approximately eight days of testimony relating to the defendants' common conspiracy charge, followed by approximately two days of testimony dealing almost exclusively with Michael's substantive trafficking charges. Of the twenty trial witnesses, fifteen testified only about the conspiracy, and two testified only as to the trafficking charges.

Three witnesses, Agent Mark Francisco, J.D. Sparks, and Cleo Spears, were crossover witnesses who testified as to both issues. Agent Mark Francisco was called to the witness stand twice, first during the State's presentation of evidence about the conspiracy, and later to testify regarding Michael's trafficking charges. J.D. Sparks, the SBI forensic chemist, testified about the chemical analysis performed on drug evidence. The trial court gave the following instruction to the jury regarding the portion of J. D. Sparks' testimony dealing with evidence collected in Michael's separate trafficking charges:

Ladies and gentlemen of the jury, the evidence received on today's date, that being 66A through E, and the accompanying lab report contained in State's Exhibit 76, are offered and received against the defendant Michael Holmes only on the substantive charges of trafficking cocaine.

The trial court also clearly marked the dividing line between Cleo Spears' initial testimony relating to the conspiracy period and his subsequent testimony offered on the issue of Michael's separate offenses by providing the following limiting instructions to the jury:

THE COURT: Ladies and gentlemen of the jury, I think it would be fair to instruct you at this time that the defendant, Michael Holmes, as I've already indicated, is charged with some separate offenses occurring on or about November 8, 1990, that being trafficking cocaine by possession of four hundred grams or more, by sale, delivery, by transportation.

And Ms. Strickland, having met with me at the bench with the defendant's attorneys, this evidence is offered on that issue; is that correct?

Ms. STRICKLAND: That's correct, Judge.

THE COURT: All right. You may proceed. It's admissible as to the defendant Michael Holmes only.

In light of the structure of the trial and the limiting instructions given during testimony, we find that Marie was not prejudiced.

Michael also has not demonstrated how joinder prejudiced him. He asserts misjoinder "led to manifest unfairness because the jury, the Court and the prosecution were unnecessarily confused by the overlapping facts and legal principles." However, a defendant's "unsupported statement of possible prejudice is not sufficient to show abuse of discretion on the part of the trial judge in allowing the motion to consolidate." *State v. Ruffin*, 90 N.C. App. 712, 714, 370 S.E.2d 279, 280 (1988) (quoting *State v. Davis*, 289 N.C. 500, 508, 223 S.E.2d 296, 301, *death sentence vacated*, 429 U.S. 809, 50 L. Ed. 2d 69 (1976)). Since neither Michael nor Marie have shown how joinder of defendants deprived them of a fair trial, we hold the trial court did not abuse its discretion in joining the defendants for trial.

## II. Joinder of Offenses

**[2]** Michael contends the consolidation of his conspiracy charge and his substantive trafficking charges in one trial was improper as a matter of law. We disagree.

Joinder of offenses is provided for in N.C. Gen. Stat. § 15A-926(a) (1988) which states that "[t]wo or more offenses may be joined . . . for trial when the offenses . . . are based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan." If no transactional connection is found, the ruling is improper as a matter of law. *State v. Silva*, 304 N.C. 122, 126, 282 S.E.2d 449, 452 (1981). As the State points out in its brief, "drug dealing by its very nature ordinarily involves a series of acts or transactions connected together or constituting part of a single scheme or plan." The specific sale of cocaine from which Michael's substantive trafficking charges arose was part of the overall "business" plan by the Holmes family to sell drugs. In *State v. Styles*, 116 N.C. App. 479, 482, 448 S.E.2d 385, 387 (1994), *disc. review denied*, 339 N.C. 620, 454 S.E.2d 265 (1995), this Court found that joinder of the charges of (1) knowingly keeping a dwelling for the purpose of keeping or selling controlled substances, and (2) possession of marijuana with intent to sell and deliver, with (3) selling marijuana to a minor, was proper. Despite the one month time gap between the

offenses sought to be joined, the Court determined that a transactional connection existed, noting "[t]he 'common thread' is the selling and distribution of marijuana. The 'scheme' was to sell the illegal substance for profit." *Id.* Similarly, Michael's conspiracy charge and his trafficking charges are "acts connected together" by the common thread of selling and distributing cocaine, and "constituting parts . . . of a single scheme" to sell the illegal substance for profit within G.S. § 15A-926(a).

Since a transactional connection has been found, the trial court's ruling on joinder of offenses will only be disturbed where it was "so arbitrary that it could not have been the product of a reasoned decision." *State v. Harding*, 110 N.C. App. 155, 162, 429 S.E.2d 416, 421 (1993). Such an abuse of discretion may occur when the offenses are "so separate in time and place and so distinct in circumstances as to render consolidation unjust and prejudicial to the defendant." *State v. Corbett*, 309 N.C. 382, 389, 307 S.E.2d 139, 144 (1983). Michael's conspiracy offense and his substantive trafficking offenses do not meet that criteria and, therefore, we find no error in their joinder for trial.

### III. Opening Statement

**[3]** Both defendants contend the State misstated the facts in its opening statement and the court committed reversible error in failing to provide a curative instruction. We find no error.

N.C. Gen. Stat. § 15A-1221(a)(4) permits each party in a criminal jury trial to make an opening statement but does not define the scope of that statement. *State v. Mash*, 328 N.C. 61, 64-65, 399 S.E.2d 307, 310 (1991). However, wide latitude is generally allowed with respect to its scope. *State v. Summerlin*, 98 N.C. App. 167, 171, 390 S.E.2d 358, 360, *disc. review denied*, 327 N.C. 143, 394 S.E.2d 183 (1990). "Control of the parties' opening statements is within the discretion of the trial court." *State v. Gibbs*, 335 N.C. 1, 40, 436 S.E.2d 321, 343 (1993), *cert. denied*, —— U.S. ——, 129 L. Ed. 2d 881 (1994).

During her opening statement in this case, the prosecutor stated:

The evidence will show that Michael Holmes is guilty of selling those five kilograms of cocaine, as well as the agreement between him and his mother and the other testifying co-conspirators to do this act. The agreement is the crime. And there was an agreement between them.

STATE v. HOLMES

[120 N.C. App. 54 (1995)]

At the close of the state's evidence, we ask that you return a verdict of guilty for both Michael Lynn Holmes for conspiracy to trafficking cocaine of four hundred grams or more, trafficking cocaine by possession, trafficking cocaine by sale, trafficking cocaine by delivery, and trafficking cocaine by transportation, as well as finding Marie Holmes guilty of conspiracy of trafficking cocaine of four hundred grams or more.

It was not until after the completion of all opening statements that an objection was raised to the prosecutor's remark which incorrectly indicated an overlap between the conspiracy charges and the substantive trafficking charges. At that time, counsel for the defendants requested the jury be given a curative instruction. The trial judge responded, "I'll have to rule on the evidence as it comes in. And I'll give the jury the necessary instructions as I perceive them to be as the evidence is offered." The court later gave general clarifying instructions. In light of the trial judge's control of the opening statement, he did not abuse his discretion. We find no error.

IV. Jury Instruction Before Testimony

[4] Both Michael and Marie argue the trial court committed reversible error when it misinstructed the jury on conspiracy law prior to evidence being presented. We find no merit to their argument.

After the jurors were sworn, and prior to the beginning of testimony, the trial court addressed the jury:

Ladies and gentlemen of the jury, the next stage of the trial process in just a few moments will be the right of the attorneys to make an opening statement to you. Prior to doing that and in view of the fact that the attorneys in the trial of this case have forecast the evidence phase consuming approximately three to four weeks, the Court feels it appropriate to give you some preliminary instructions in order to assist you in listening to the opening statements of counsel and the evidence.

The Court hastens to add that you'll receive at the conclusion of the case particularized instructions based upon the evidence produced in the case.

Each of the separate defendants is charged with the offense of conspiracy to trafficking cocaine in an amount of four hundred grams or more. The general rules of conspiracy are as follows:

A criminal conspiracy is the unlawful concurrence of two or more persons in a scheme or agreement to do an unlawful act or to do a lawful act in an unlawful way, or by unlawful means. The unlawful agreement and not the execution of the agreement is the offense.

To constitute a conspiracy it is not necessary that the parties should have come together and agreed in express terms to unite for a common object. Rather, a mutual implied understanding is sufficient so far as the combination for conspiracy is concerned to constitute the offense.

If a number of parties conspire or agree to engage in an unlawful enterprise, each is liable for acts committed by any of them in furtherance of the common design, notwithstanding that such acts were not intended or contemplated as part of the original undertaking.

We note that defendants failed to raise an objection at the time the instruction was given, and thus, have not preserved the question for appellate review as required in N.C.R. App. P. 10(b)(1). Nevertheless, the question may be the basis of an assignment of error if it amounts to plain error. *See* N.C.R. App. P. 10(c)(4). "[T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where . . . it can be said the claimed error is a 'fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done'. . . ." *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982)). To satisfy the requirements of the plain error rule, the Court must find error, and that if not for the error, the jury would likely have reached a different result. *State v. Reid*, 335 N.C. 647, 667, 440 S.E.2d 776, 787 (1994).

Citing *State v. Small*, 301 N.C. 407, 272 S.E.2d 128 (1980), the defendants argue the Court misstated the law regarding conspiracy by suggesting that an act of one partner in furtherance of the conspiracy is attributable to all, and thereby prejudiced the defendants. However, in response to *Small*, the statute upon which that decision was based was repealed and replaced with N.C. Gen. Stat. § 14-5.2, "which abolished the distinctions between accessories before the fact and principals and requires that the former be treated now as principals . . . ." *State v. Rowe*, 81 N.C. App. 469, 472, 344 S.E.2d 574, 576, *dismissal allowed, disc. review allowed in part*, 318 N.C. 419, 349

S.E.2d 604 (1986). While the instruction might have been more exact, it does not constitute reversible error.

Assuming, *arguendo*, that the court misstated the law on conspiracy, defendants have failed to demonstrate prejudicial impact on the jury. "In deciding whether a defect in the jury instruction constitutes 'plain error,' the appellate court must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt." *Odom*, 307 N.C. at 661, 300 S.E.2d at 378-79. The instruction in question was given to the jury before opening statements to assist the jury "in listening to the opening statements of counsel and the evidence." The jury charge at the close of all evidence correctly stated the law on conspiracy and resolved any confusion that might have occurred as a result of the court's earlier statement. An improper instruction later corrected is "completely lacking in prejudicial effect." *Reid*, 335 N.C. at 667, 440 S.E.2d at 787, (quoting *State v. Wells*, 290 N.C. 485, 498, 226 S.E.2d 325, 334 (1976)). After examining the record, we find no plain error.

## V. Evidentiary Issues

Both defendants identify numerous assignments of error in testimony admitted at trial which can be categorized into two evidentiary issues.

## A.

[5] Defendants argue the trial court erred by allowing into evidence testimony of the prior bad acts of witnesses in violation of N.C.R. Evid. 404. We find their argument without merit.

We first note that of the more than 100 questions at trial assigned as error by each defendant, Marie raised an objection to only eight, and Michael objected to only thirteen. "In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion . . . ." N.C.R. App. P. 10(b)(1). We confine our review to those questions objected to at trial because after examining the record, we find that the errors not objected to at trial are not so fundamental as to amount to plain error. *See* N.C.R. App. P. 10(c)(4).

N.C.R. Evid. 402 states the general rule: "All relevant evidence is admissible, except as otherwise provided [by constitution, by statute] . . . or by these rules." An exception to the general rule of admissibility is set out in N.C.R. Evid. 404(b). Rule 404(b) provides "[e]vidence

of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." "Rule 404(b) has been interpreted as applicable only to parties and, in a criminal case, would usually be applicable only to a defendant." *State v. Morgan,* 315 N.C. 626, 636, 340 S.E.2d 84, 91 (1986). The testimony of "crimes, wrongs, or acts" objected to in this case is that of the witnesses and not of the defendants. Therefore, Rule 404(b) is not applicable. Since the evidence is not excluded under an exception to the general rule, it is admissible if it is relevant. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.R. Evid. 401. As the State suggests, "the testimony in question was relevant in serving purposes like showing a witness's qualifications to discuss the drug trade generally or the circumstances of this case particularly." Since the evidence was relevant and thus admissible, the trial court properly overruled defendants' objections. We find no error.

## B.

Defendants argue the trial court erred in allowing inadmissible hearsay which did not satisfy the co-conspirator exception of N.C.R. Evid. 801(d)(E). We find no prejudical error.

As a general rule, hearsay is inadmissible. N.C.R. Evid. 802. However, "[t]he law is well established regarding the admissibility of statements by co-conspirators. A statement by one conspirator made during the course and in furtherance of the conspiracy is admissible against his co-conspirators." *State v. Mahaley,* 332 N.C. 583, 593, 423 S.E.2d 58, 64 (1992), *cert. denied,* —— U.S. ——, 130 L. Ed. 2d 649 (1995); N.C.R. Evid. 801(d)(E).

Defendant Michael identifies ninety-five assignments of error, all of which he characterizes as inadmissible hearsay. We have reviewed the record and note that only eighteen assignments of error were objected to at trial and are properly preserved for this Court's review. *See* N.C.R. App. P. 10(b)(1). Of those eighteen, eight fell within the co-conspirator exception of Rule 801(d)(E), four were admitted for non-hearsay purposes, and three were objected to on grounds other than hearsay. Our review of defendant Marie's sixty-eight assignments of error reveals that an objection was raised at trial to only twenty. Of those, three fell within the co-conspirator exception, seven were admitted for non-hearsay purposes, and two were objected to on

grounds other than hearsay. In addition, Marie's objections were sustained three times. On one of the three occasions, the court gave a jury instruction and on another, allowed a motion to strike.

Assuming, *arguendo*, that Michael and Marie's remaining objections were instances of inadmissible hearsay, we note that "the erroneous admission of hearsay, like the erroneous admission of other evidence, is not always so prejudicial as to require a new trial." *State v. Ramey*, 318 N.C. 457, 470, 349 S.E.2d 566, 574 (1986). Defendants must show they were "prejudiced by the error and that there was a reasonable possibility that a different result would have been reached at trial if the error had not been committed." *State v. Sills*, 311 N.C. 370, 378, 317 S.E.2d 379, 384 (1984). Defendants have failed to make the required showing. Further, we find none of the errors identified by defendants but not objected to at trial, rise to the level of plain error. *See* N.C.R. App. P. 10(c)(4). Therefore, we hold that any allegedly erroneous admission of hearsay was harmless.

## VI. Marital Privilege Instruction

**[6]** Both Michael and Marie contend the trial court violated due process and deprived them of a fair trial by informing the jury that the marital privilege prohibited the jury from hearing relevant evidence. We disagree.

The trial court interrupted the testimony of Kimberly Johnson, Michael's ex-wife, and met with the attorneys out of the jury's presence. The judge asked the State "to define for me the parameters [of Kimberly Johnson's testimony] as it relates to the marital period between Michael Holmes and Ms. Johnson as to what kind of information you're going to be eliciting." After a brief discussion, the judge explained to Kimberly Johnson that under N.C. Gen. Stat. § 8-57 she would be prohibited from "testifying as to those acts or declarations that were made during the time frame of the marriage to Michael Holmes that are one-on-one situations." Defendants' counsel asked for a jury instruction, and upon the jury's return to the courtroom, the trial court stated:

Ladies and gentlemen of the jury, we have in the State of North Carolina a statute designated as North Carolina General Statute eight dash fifty-seven, which in summary form is a confidential communication statute between husband and wife.

Therefore, as a result of a review of that statute, I will prohibit the State of North Carolina from eliciting information of a

confidential communication between Ms. Johnson, who was the former wife of Michael Holmes, from the date and time of July 11, 1987, through May of 1990, which as I understand to be the date and time of the· divorce, of eliciting information of a confidential communication made that occurred during that time frame. The State may proceed.

Defendants made no objection to this instruction at trial.

We find nothing in the facts that supports defendants' contention that "the jury was told in effect that they were prohibited by the defendant's marital privilege from hearing *relevant* evidence." (emphasis added). The court merely instructed the jury on the law as requested by defendants. Therefore, we find no error.

VII. Judicial Expression of Opinion

[7]    Defendants argue the trial court committed reversible error by expressing an opinion in violation of N.C. Gen. Stat. § 15A-1222. We find no merit to their argument.

In *State v. Grogan*, this Court summarized the law regarding the application of N.C. Gen. Stat. § 15A-1222 prohibiting the judicial expression of opinion in a criminal trial:

A trial judge is prohibited from expressing any opinion which is calculated to prejudice either of the parties at any time during the trial. The slightest intimation from the trial judge as to the weight or credibility to be given evidentiary matters will always have great weight with the jury, and great care must be exercised to insure that neither party is unduly prejudiced by any expression from the bench which is likely to prevent a fair and impartial trial. Not every indiscreet and improper remark by a trial judge is of such harmful effect as to require a new trial . . . . The probable effect upon the jury determines whether the conduct or language of the judge amounts to an expression of opinion which will entitle the defendant to a new trial.

*State v. Grogan*, 40 N.C. App. 371, 373-74, 253 S.E.2d 20, 22-23 (1979) (citations omitted).

Both Michael and Marie raise the issue of the propriety of the trial court's remarks by (1) reading to the jury two witness immunity letters which had been received in evidence and published to the jury, (2) explaining the law regarding confidential communications between husband and wife in connection with the exclusion of cer-

tain testimony, (3) explaining its ruling on the introduction of a transcription of only a portion of a video tape, and (4) taking judicial notice of a sentence imposed on a witness for which the trial court judge had been the sentencing judge. In addition, Marie takes issue with the trial court's (1) response to defense counsel's cross-examination of a witness regarding the transcription of a portion of video tape not offered in evidence, (2) repetition of a witness' answer regarding the time period to which his testimony related, (3) explanation of the court's ruling saying it was defense counsel's "jury argument," and (4) interruption of defendants' closing argument and explanation to the jury of how substantial assistance is determined in relation to witness immunity.

We note that "[g]enerally, ordinary rulings by the court in the course of trial do not amount to an impermissible expression of opinion." *State v. Welch,* 65 N.C. App. 390, 393-94, 308 S.E.2d 910, 913 (1983). Defendants cite no authority to support their contention that a trial court's explanation of its ruling amounts to an impermissible expression of opinion. "Whether the judge's comments, questions or actions constitute reversible error is a question to be considered in light of the factors and circumstances disclosed by the record, the burden of showing prejudice being upon the defendant." *State v. Blackstock,* 314 N.C. 232, 236, 333 S.E.2d 245, 248 (1985). After a careful review of the record, we find that none of the trial court's remarks at issue violated the judge's required neutrality and resulted in an impermissible expression of opinion.

## VIII. Double Jeopardy

[8] Michael contends this trial violated due process by placing him in double jeopardy by sentencing him consecutively for trafficking by sale and trafficking by delivery. We disagree.

The double jeopardy clause of the United States Constitution and the North Carolina Constitution prohibits, among other things, multiple punishments for the same offense. *State v. Gardner,* 315 N.C. 444, 451, 340 S.E.2d 701, 707 (1986). However, under N.C. Gen. Stat. § 90-95(h), "[s]ale, manufacture, delivery, transportation, and possession of . . . [cocaine] are separate trafficking offenses for which a defendant may be separately convicted and punished." *State v. Diaz,* 317 N.C. 545, 554, 346 S.E.2d 488, 494 (1986); *see also State v. Perry,* 316 N.C. 87, 103-04, 340 S.E.2d 450, 461 (1986). Therefore, defendant's consecutive sentences for trafficking by sale and trafficking by delivery do not violate double jeopardy and we find no error.

IX. Sentencing

**[9]** Both defendants argue the court erred in sentencing them to the maximum allowable sentences by finding that each was a leader in the charged crimes. We disagree.

The trial court found as a factor in aggravation that both Michael and Marie "occupied a position of leadership or dominance of other participants." N.C. Gen. Stat. § 15A-1340.4(a)(1)(a) (1988) (repealed effective October 1, 1994). In *State v. Hayes*, this Court noted:

> In order to be valid, an aggravating factor must be supported by sufficient evidence to allow a reasonable judge to find its existence by a preponderance of the evidence. The trial court should be permitted wide latitude, however, in arriving at the truth as to the existence of aggravating and mitigating factors, for it alone observes the demeanor of the witnesses and hears the testimony.

102 N.C. App. 777, 781, 404 S.E.2d 12, 15 (1991) (citations omitted). Moreover, "[e]vidence tending to show that a defendant occupied a position of leadership over *one* of the participants in the offense is sufficient to support this aggravating factor, regardless of whether the evidence also shows that others exercised leadership or control in the commission of an offense." *Id.* at 782, 404 S.E.2d at 15.

With respect to the conspiracy charge, the evidence tended to show that Michael assumed a leadership role and individually completed drug deals, particularly when Vinston Holmes was absent. He instructed Rosa Elaine Ashford to falsify garage records in order to launder money from cocaine sales. Michael and Vinston Holmes met with Ezumer Palmer and arranged to purchase large quantities of cocaine from him, and Michael personally purchased eight kilos of cocaine from Palmer on one occasion. In the substantive trafficking charges, Michael set up the cocaine sale to Cleo Spears. He agreed to the financial arrangements and contacted Spears when the pick-up was ready.

With respect to Marie's conspiracy charge, there was evidence tending to show she played a significant role with the money from cocaine sales. She picked up and counted the money, and on one occasion indicated the money received from Russell Butler was incorrect resulting in an additional payment to complete the transaction. Marie also instructed Rosa Elaine Ashford to falsify garage records. Belinda Melvin indicated to Gloria Jones that dealing directly with Marie meant that Gloria was now a trusted member of the organiza-

tion. This evidence is sufficient to support the trial court's findings that each defendant occupied a position of leadership. We find no error.

## X. Jury Charge

**[10]** Defendant Marie contends the trial court deprived her of a fair trial and thus committed plain error by not adequately instructing the jury on the nature of her conspiracy charge. We disagree.

The primary purpose of a jury charge is to inform the jury of the law as it applies to the evidence "in such manner as to assist the jury in understanding the case and in reaching a correct verdict." *State v. Williams*, 280 N.C. 132, 136, 184 S.E.2d 875, 877 (1971). While the court must explain each essential element of the offense charged, the manner in which it chooses to do so is within its discretion. *State v. Young*, 16 N.C. App. 101, 106, 191 S.E.2d 369, 373 (1972).

The judge met with the attorneys outside the presence of the jury to discuss the jury charge. He proposed that he first give the instruction on Michael's substantive offenses and then instruct the jury as to Michael's conspiracy offense and the lesser-included offenses. He further proposed:

> Because I am giving the lesser-included offenses in each case, as to Ms. Holmes and Mr. Holmes, I would ask permission of both sides not to have to redefine conspiracy at each time, that I can simply refer back to the first definition that I've given. Because that would just be repeating. I will repeat it if you feel it adds anything to the instructions.

Defendants' attorney responded, "I think one description as to conspiracy will be sufficient."

The judge instructed the jury regarding Michael's trafficking offenses. He then turned to the conspiracy charge:

> Ladies and gentlemen of the jury, each defendant is charged with conspiracy to trafficking cocaine in an amount of four hundred grams or more, I shall give you the lesser-included offenses as the charge relates to the defendant Michael Lynn Holmes. And thereafter I shall ask you to recall the instructions as to the defendant Laura Marie Autry Holmes without repeating the instructions as to the conspiracy charge.

APPALACHIAN POSTER ADVERTISING CO. v. HARRINGTON

[120 N.C. App. 72 (1995)]

After giving instructions as to the general rules of conspiracy and the lesser-included offenses, he stated: "Ladies and gentlemen of the jury, I've already given you the instructions on conspiracy and the lesser-included offenses as they related to the defendant, Michael Lynn Holmes. Those instructions are equally applicable to the defendant, Laura Marie Autry Holmes. And I ask you to recall them."

Defendants made no objection after the completion of the jury charge when given the opportunity to do so, and as such are not entitled to relief unless the error, if any, constituted plain error. "[T]o rise to the level of plain error, the error in the instructions must be 'so fundamental that it denied the defendant a fair trial and quite probably tilted the scales against him.' " *State v. Barton*, 335 N.C. 696, 702, 441 S.E.2d 295, 298 (1994) (quoting *State v. Collins*, 334 N.C. 54, 62, 431 S.E.2d 188, 193 (1993)). After reviewing the trial court's instruction on conspiracy, we find that defendant Marie was not deprived of a fair trial despite the court's decision not to repeat the entire instruction, having just given it for Michael. Therefore, the trial court did not commit plain error.

We have carefully considered all of defendants' assignments of error and find that both Michael Lynn Holmes and Laura Marie Autry Holmes received a fair trial free from prejudicial error.

No error.

Judges EAGLES and WALKER concur.