An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1257

NORTH CAROLINA COURT OF APPEALS

Filed:  1 July 2014

STATE OF NORTH CAROLINA

v.

Mecklenburg County
Nos. 09 CRS 246322, 250051

ANGEL BROWN VAZQUEZ

Appeal by defendant from judgment entered 16 October 2012 by Judge Eric L. Levinson in Mecklenburg County Superior Court. Heard in the Court of Appeals 19 March 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General Martin T. McCracken, for the State.*

> *Guy J. Loranger for Defendant.*

ERVIN, Judge.

Defendant Angel Brown Vazquez appeals from a judgment sentencing him to a term of 15 to 18 months imprisonment stemming from convictions for assault inflicting serious bodily injury and carrying a concealed weapon.  On appeal, Defendant contends that the trial court erred by denying his motion to suppress evidence seized during the search of his book bag conducted by a school official and that his trial counsel

provided him with constitutionally deficient representation by failing to renew his motion to sever the trial of the two charges that had been lodged against him before the conclusion of all of the evidence. After careful consideration of Defendant's challenges to the trial court's judgment in light of the record and the applicable law, we conclude that the trial court's judgment should remain undisturbed.

## I. Factual Background

## A. Substantive Facts

## 1. State's Evidence

Carlos Grant, an assistant principal at Myers Park High School, was outside the cafeteria on the morning of 22 September 2009. At approximately 7:15 a.m., which was before the first class of the day was scheduled to begin, Mr. Grant noticed that a large number of students were moving toward a particular area, an event that usually signaled that something inappropriate was happening.

As Mr. Grant and other staff members arrived at the location toward which the students were heading, they observed Jynae Brown involved in a heated argument with Tamara Andrews. According to Mr. Grant, Ms. Brown and Ms. Andrews were screaming profanities at each other and had positioned themselves as if they were about to fight. A crowd consisting of approximately

50 students, including two of Ms. Andrews' sisters, had gathered around Ms. Brown and Ms. Andrews. After arriving at the scene of the confrontation, Mr. Grant grabbed Ms. Andrews by the arm and led her away. In addition, Mr. Grant told Ms. Andrews' sisters to leave and accompanied all three of the young women towards the office.

In the meantime, Ms. Brown was continuing to act in an aggressive manner. For that reason, Steven Blalock, a uniformed school resource officer, approached Ms. Brown and stretched out his arms for the purpose of restraining her. As Ms. Brown struggled, yelled profanities, and attempted to continue her confrontation with Ms. Andrews, Officer Blalock grabbed her from behind with both his arms in order to obtain better control over her activities. After initially failing to recognize the individual who was attempting to restrain her, Ms. Brown eventually turned, realized that Officer Blalock was restraining her, cursed at him, and told him to take his hands off of her body.

As Officer Blalock repeated his instruction that Ms. Brown should stop resisting his efforts to bring her under control, Ms. Brown persisted in her efforts to escape from his restraint. At that point, Matthew Han, a school security associate, drove up in a John Deere Gator all-terrain vehicle. After telling Ms.

Brown that she was under arrest, Officer Blalock used his weight to pull Ms. Brown to the ground in order to handcuff her. As Officer Blalock attempted to place Ms. Brown in handcuffs, Mr. Han held Ms. Brown's legs down.

John Robbins, another security associate who was wearing a school security uniform consisting of a light blue button-down shirt, black pants, and a badge, knelt next to Officer Blalock for the purpose of attempting to assist him after observing that Ms. Brown was reaching towards Officer Blalock and that her hand had neared his weapon. Although she was upset during the time that she was on the ground, Ms. Brown never called for help.

In spite of the fact that Officer Blalock had instructed Ms. Brown to stop resisting, she did not comply with that request. After Ms. Brown dug her nails into Officer Blalock's arm, he cursed at her. Eventually, Officer Blalock handcuffed Ms. Brown and believed that he was gaining control over the situation. At that point, however, Defendant, who is Ms. Brown's brother, quickly emerged from the crowd and punched Mr. Robbins in his face using a hand on which he was wearing a ring.

After Defendant hit him, Mr. Robbins fell back in a stunned condition and attempted to collect himself and find his glasses. As a result of the blow that he received from Defendant, Mr. Robbins suffered fractured facial bones; underwent a number of

surgical procedures, including the placement of two titanium plates in his face; and remained under medical treatment for a year.

After Defendant struck Mr. Robbins, Jeffrey Kraftson, a teacher at Myers Park who was attempting to help control the surrounding crowd, approached Defendant for the purpose of restraining him. After helping Mr. Kraftson bring Defendant under his control, Officer Blalock called for assistance because he had used the only set of handcuffs in his possession for the purpose of restraining Ms. Brown. After Defendant was taken to the ground, he began to calm down.

Jason Kline, another assistant principal at Myers Park, arrived after Defendant and his sister had already been placed on the ground and helped to disperse the crowd. A number of book bags and jackets that had been left in the area in which the assault upon Mr. Robbins had occurred were placed in the Gator and removed. After being informed that one or more of the book bags might belong to Defendant and Ms. Brown, Mr. Kline opened one of the bags for the purpose of identifying its owner.

Upon looking inside Defendant's book bag, Mr. Kline found notebooks, books, and a screwdriver with cloth taped to the handle.[1] Mr. Kline became concerned about finding this

---

[1]The screwdriver was discovered in a pocket near the opening

particular screwdriver since the manner in which the handle was wrapped suggested that the screwdriver might be used as a weapon. As a result, Mr. Kline took the book bag to Officer Blalock, who conducted a further search of the bag and discovered two additional screwdrivers with handles that had been wrapped in a manner similar to that in which the first had been wrapped. Although some classes, such as auto shop, might require students to use a screwdriver, Mr. Kline testified that any needed screwdrivers or similar implements would have been provided by the school. Mr. Grant, on the other hand, testified that none of the courses taught at the school required the use of a screwdriver.

## 2. Defendant's Evidence

Ms. Brown and Defendant are brother and sister. On the date of the incident in question, Ms. Brown argued with Ms. Andrews and her sisters prior to the beginning of first period. After Mr. Grant told the Andrews sisters to accompany him to the office, he motioned for Ms. Brown to do likewise. As Ms. Brown attempted to comply with this instruction, Officer Blalock grabbed her, threw her to the ground, cursed at her, and insulted her. Although Ms. Brown remained on the ground with her hands behind her back for almost three minutes, no one ever

of the book bag.

told her that she was under arrest. As a result of the fact that she was experiencing pain, Ms. Brown told everyone to get off of her and yelled that someone should help her.

Defendant, who was in the tenth grade, had seen his sister arguing with Ms. Andrews earlier that morning. However, he continued on his way to class after seeing that nothing was going to come of the confrontation between the two young women. However, a classmate got his attention, after which he dropped his book bag in the math building and returned to the area in which the confrontation had occurred. As he did so, Defendant heard his sister screaming for help and telling people to get off of her.

Although Defendant noticed that Officer Blalock was wearing a police uniform and was familiar with the uniforms worn by the school's security personnel, Defendant's attention was focused on the fact that there were three men on top of his sister. As a result, in order to protect his sister, Defendant approached Mr. Robbins and hit him. At that point, Defendant was restrained from behind and taken into custody.

### B. Procedural History

On 22 September 2009, a magistrate's order charging Defendant with carrying a concealed weapon was issued. On 7 December 2009, the Mecklenburg County grand jury returned bills

of indictment charging Defendant with carrying a concealed weapon and assault inflicting serious bodily injury. On 27 September 2010, Defendant filed a motion seeking to have evidence seized from his person and his book bag suppressed. Although Plaintiff's numerous violations of the relevant provisions of the North Carolina Rules of Appellate Procedure made our review of his challenges to the trial court's order unnecessarily difficult, we decline to dismiss Plaintiff's appeal given our strong preference for deciding cases on the merits rather than on procedural grounds. On 25 September 2012, the State filed a motion seeking to have the offenses with which Defendant had been charged joined for trial.

The charges against Defendant came on for trial before the trial court and a jury at the 25 September 2012 criminal session of the Mecklenburg County Superior Court. At the beginning of the trial proceedings, the trial court held a hearing concerning the issues raised by Defendant's suppression motion and announced that Defendant's motion should be denied. In addition, the trial court allowed the State's joinder motion over Defendant's objection. On 1 October 2012, the jury returned verdicts convicting Defendant of assault inflicting serious bodily injury and carrying a concealed weapon. On 16 October 2012, the trial court consolidated Defendant's

convictions for judgment and ordered that Defendant be imprisoned for a term of 15 to 18 months. Defendant noted an appeal to this Court from the trial court's judgment.

## II. Legal Analysis

### A. Motion to Suppress

In his first challenge to the trial court's judgment, Defendant contends that the trial court erred by denying his motion to suppress the evidence that had been seized from his person and his book bag and allowing the admission of evidence concerning the screwdrivers that were discovered during the search of his book bag. More specifically, Defendant argues that Mr. Kline did not have any justification for searching his book bag, thereby establishing that the screwdrivers were seized in violation of his state and federal constitutional rights to be free from unreasonable searches and seizures. We do not find Defendant's argument persuasive.

### 1. Standard of Review

Appellate review of a defendant's challenge to the denial of a suppression motion is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of

law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). Findings of fact that have not been "challenged on appeal . . . are deemed to be supported by competent evidence and are binding on appeal." *State v. Roberson*, 163 N.C. App. 129, 132, 592 S.E.2d 733, 735-36, *disc. review denied*, 358 N.C. 240, 594 S.E.2d 199 (2004). As a general proposition, a "judge must set forth in the record his findings of facts and conclusions of law" in ruling on the issues raised by the making of a motion to suppress. N.C. Gen. Stat. § 15A-977(f). However:

> [i]f there is no material conflict in the evidence on voir dire, it is not error to admit the challenged evidence without making specific findings of fact, although it is always the better practice to find all facts upon which the admissibility of the evidence depends. In that event, the necessary findings are implied from the admission of the challenged evidence.

*State v. Steen*, 352 N.C. 227, 237, 536 S.E.2d 1, 7 (2000) (citations omitted) (citing *State v. Ladd*, 308 N.C. 272, 278, 302 S.E.2d 164, 168-69 (1983); *State v. Phillips*, 300 N.C. 678, 685, 268 S.E.2d 452, 457 (1980); *State v. Riddick*, 291 N.C. 399, 408-409, 230 S.E.2d 506, 512-13 (1976); *State v. Biggs*, 289 N.C. 522, 530, 223 S.E.2d 371, 376 (1976); *State v. Whitley*, 288 N.C. 106, 110, 215 S.E.2d 568, 571 (1975)), *cert. denied*, 531 U.S. 1167, 121 S. Ct. 1131, 148 L. Ed. 2d 997 (2001). "The trial

court's conclusions of law . . . are fully reviewable on appeal." *State v. Hughes*, 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000).

## 2. Validity of the Trial Court's Decision

According to Defendant, the fact that he had been handcuffed and taken into custody at the time that his book bag was searched precluded Mr. Kline from having the right to search his book bag. More specifically, Defendant contends that, since he could not have obtained access to the book bag and since there was no evidence that he had utilized any sort of weapon during his attack on Mr. Robbins, Mr. Kline had no valid basis for searching his book bag and seizing the screwdrivers. Although the record supports the factual predicate that underlies Defendant's argument, we are not persuaded that the search of Defendant's book bag and the seizure of the screwdrivers violated his state and federal constitutional right to be free from unreasonable searches and seizures.

According to well-established principles of Fourth Amendment jurisprudence, "school officials need not obtain a warrant before searching a student who is under their authority." *N.J. v. T. L. O.*, 469 U.S. 325, 340, 105 S. Ct. 733, 742, 83 L. Ed. 2d 720, 734 (1985). In other words, an analysis of the lawfulness of the search of a student or his

property conducted by school officials on school premises "does not require strict adherence to the requirement that searches be based on probable cause to believe that the subject of the search has violated or is violating the law"; instead, "the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search." *Id.* at 341, 105 S. Ct. at 742, 83 L. Ed. 2d at 734. In making the required reasonableness determination, reviewing courts should determine first, whether the search was justified at its inception and second, whether the scope of the search that was actually conducted was reasonably related to the initial justification for the search in question. *Id.* at 341, 105 S. Ct. at 742-43, 83 L. Ed. 2d at 734. "Under ordinary circumstances, a search of a student by a teacher or other school official will be 'justified at its inception' when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." *Id.* at 341-42, 105 S. Ct. at 743, 83 L. Ed. 2d at 734-35.

In his brief, Defendant places substantial reliance on the language quoted in the preceding paragraph, arguing that school officials had no reasonable basis for searching his book bag given that the record did not reveal the existence of any

connection between his assault on Mr. Robbins and the contents of his book bag. Although Defendant is correct in noting the absence of any connection between his assault upon Mr. Robbins and the contents of his book bag, the argument that Defendant has made in reliance upon that fact overlooks the undisputed evidence that, instead of opening Defendant's book bag in the hope of finding something that could be used in prosecuting Defendant for assaulting Mr. Robbins, Mr. Kline "opened one to see whose it was." We have no hesitation in concluding that Mr. Kline acted reasonably given that a number of unidentified jackets and book bags had been left on school property after the incident, which occurred before a crowd of students, during which one student assaulted a school security associate and two students had been placed under arrest. Assuming, without necessarily deciding, that Defendant had a reasonable expectation of privacy in the book bag that he abandoned prior to assaulting Mr. Robbins, school officials clearly had an interest in identifying the owners of the jackets and book bags that had been left behind in the aftermath of the incident in question in order to ensure that these items were returned to their rightful owners and to protect the property in the interim. As a result, Mr. Kline did not act in an unreasonable manner at the time that he opened Defendant's book bag and

discovered the presence of a screwdriver with an unusually wrapped handle.

The result that we reach in this instance is similar to that which we reached in *State v. Francum*, 39 N.C. App. 429, 430, 250 S.E.2d 705, 706 (1979), in which the defendant, who had been involved in a serious motor vehicle accident, was transported to the hospital. After arriving at the scene of the accident, an officer opened a plastic bag and discovered the presence of unlawful controlled substances. *Id.* at 430-31, 250 S.E.2d at 706. After noting that the officer did not have probable cause to believe that the defendant had committed a crime or that evidence of the defendant's commission of a criminal offense would be discovered in the plastic bag, we concluded that a reasonableness standard should be utilized in evaluating the validity of the defendant's challenge to the search of the bag and the seizure of the drugs, *id.* at 431-32, 250 S.E.2d at 706-07; analogized the officer's decision to open the plastic bag to an inventory search; and determined that the officer acted reasonably in light of the fact that the "primary justification for such a limited intrusion by the police is that of safeguarding the individual's property from loss or theft," the fact that "there ha[d] been no contention that the procedure was a pretext for concealing an investigatory police motive,"

and the fact that "[i]t was reasonable for the officer to see that the personal effects in the automobile were not lost and were secured prior to the towing of the automobile." *Id.* at 433-34, 250 S.E.2d at 708.

As was the case in *Francum*, the record contains no evidence tending to suggest that Mr. Kline searched Defendant's book bag for the purpose of investigating the commission of a crime. Instead, the undisputed record evidence indicates that Mr. Kline opened Defendant's book bag for the purpose of ascertaining the identity of the owner and protecting the owner's property. The fact that Mr. Kline may have had reason to believe that Defendant owned the book bag in question before opening it has no bearing on the validity of Mr. Kline's conduct given that he was entitled to make the required ownership determination for himself rather than being forced to rely on information provided by others. In our view, Mr. Kline would have been acting unreasonably in the event that he had allowed the book bags and jackets found on the scene of the confrontation involving Defendant, Ms. Brown, Ms. Andrews, Officer Blalock, and school security personnel to remain lying on the ground in an unprotected position rather than taking them into the possession of school officials, opening them up for the purpose of ensuring that the owners of the jackets and book bags in question had

been correctly identified, and ensuring that the jackets and book bags could be safely stored until they could be returned to their rightful owners. As a result, we have no difficulty in concluding that the opening of Defendant's book bag, the subsequent delivery of that book bag to Officer Blalock, and the seizure of the screwdrivers from the book bag did not violate Defendant's right to be free from unreasonable searches and seizures.

In seeking to persuade us to reach a different result, Defendant argues, among other things, that the scope of the search of his book bag was unreasonable given that Mr. Kline had to dig through his book bag to find the screwdriver and that Mr. Kline could have easily identified the owner of the book bag had he contented himself with examining the numerous documents that the book bag contained. We are not persuaded by Defendant's argument that the scope of the search of the book bag conducted by Mr. Kline was an unreasonable one, however, given the complete absence of any evidence tending to show that Mr. Kline either rummaged through Defendant's bag in search of contraband or overlooked any identifying documents in advance of the discovery of the screwdriver. On the contrary, Mr. Kline testified that he "located [the screwdriver] almost immediately after opening the bag." As a result, given our inability to

accept Defendant's argument that Mr. Kline searched Defendant's book bag in an unreasonable manner, we hold that the trial court did not err by denying Defendant's suppression motion.

## B. Ineffective Assistance of Counsel

Secondly, Defendant contends that his trial counsel provided him with constitutionally deficient representation by failing to renew his motion to sever the trial of the two charges that had been lodged against him. More specifically, Defendant contends that, had his trial counsel renewed his severance motion, either that motion would have been allowed or the trial court's joinder motion would have been reversed on appeal. Once again, we do not find Defendant's argument persuasive.

> To establish ineffective assistance of counsel, defendant must satisfy a two-prong test . . . . Under this two-prong test, the defendant must first show that counsel's performance fell below an objective standard of reasonableness as defined by professional norms. This means that defendant must show that his attorney made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, once defendant satisfies the first prong, he must show that the error committed was so serious that a reasonable probability exists that the trial result would have been different absent the error.

*State v. Lee*, 348 N.C. 474, 491, 501 S.E.2d 334, 345 (1998) (citations and quotation marks omitted) (citing *Strickland v.*

*Washington*, 466 U.S. 668, 695, 104 S. Ct. 2052, 2068, 80 L. Ed. 2d 674, 698 (1984)) (quoting *State v. Braswell*, 312 N.C. 553, 562, 324 S.E.2d 241, 248 (1985)). As the United States Supreme Court has stated, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies," so that, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice," "that course should be followed." *Strickland*, 466 U.S. at 697, 104 S. Ct. 2069, 80 L. Ed. 2d 699-700. As a result of the fact that Defendant's ineffective assistance claim hinges on the assertion that his trial counsel provided him with deficient representation by failing to renew his severance motion, Defendant must demonstrate that, had his trial counsel renewed his severance motion, the trial court would have been required to sever the trial of the offenses that Defendant was charged with having committed in order to obtain appellate relief from the trial court's judgment.[2]

---

[2]According to well-established North Carolina law, an ineffective assistance of counsel claim "brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing," with any ineffective assistance claim having been "prematurely asserted on direct appeal" to be dismissed "without prejudice to the defendant's right to reassert them during a

"When [a] defendant objects to joinder or moves to sever, the trial court must . . . determine whether the offenses are so separate in time and place and so distinct in circumstances as to render consolidation unjust and prejudicial." *State v. White*, 87 N.C. App. 311, 324, 361 S.E.2d 301, 308 (1987), *aff'd in part, rev'd in part on other grounds*, 322 N.C. 770, 370 S.E.2d 390, (1988), *cert. denied*, 488 U.S. 958, 109 S. Ct. 399, 102 L. Ed. 2d 112 (1990). In making this determination:

> a two-step analysis is required for all joinder inquiries. First, the two offenses must have some sort of transactional connection. *State v. Corbett*, 309 N.C. 382, 387, 307 S.E.2d 139, 143 (1983). Whether such a connection exists is a question of law, fully reviewable on appeal. *State v. Holmes*, 120 N.C. App. 54, 61, 460 S.E.2d 915, 920, *disc. review denied*, 342 N.C. 416, 465 S.E.2d 545 (1995). If such a connection exists, consideration then must be given as to "whether the accused can receive a fair hearing on more than one charge at the same trial," *i.e.*, whether consolidation "hinders or deprives the accused of his ability to present his defense." *State v. Silva*, 304 N.C. 122, 126, 282 S.E.2d 449, 452 (1981). This second part is addressed to the sound discretion of the trial judge and is not

subsequent [motion for appropriate relief] proceeding." *State v. Fair*, 354 N.C. 131, 166-67, 557 S.E.2d 500, 524-25 (2001) (citations omitted), *cert. denied*, 535 U.S. 1114, 122 S. Ct. 2332, 153 L. Ed. 2d 162 (2002). As a result of our belief that the extent to which Defendant was prejudiced by the failure of his trial counsel to renew his severance motion as required by N.C. Gen. Stat. § 15A-927(a)(2) can be properly determined by examining the record developed at trial, we will address the merits of Defendant's ineffective assistance of counsel claim in this opinion.

> reviewable on appeal absent a manifest abuse
> of that discretion. *Holmes*, 120 N.C. App.
> at 62, 460 S.E.2d at 920.

*State v. Montford*, 137 N.C. App. 495, 498, 529 S.E.2d 247, 250, *cert denied*, 353 N.C. 275, 546 S.E.2d 386 (2000). The factors to be considered in determining whether a transactional connection between two offenses exists "include: (1) the nature of the offenses charged; (2) any commonality of facts between the offenses; (3) the lapse of time between the offenses; and (4) the unique circumstances of each case." *Id.* at N.C. App. 498-99, 529 S.E.2d at 250.

According to N.C. Gen. Stat. § 15A-927(a)(1), "[a] defendant's motion for severance of offenses must be made before trial." "If a defendant's pretrial motion for severance is overruled, he may renew the motion on the same grounds before or at the close of all the evidence"; however, "[a]ny right to severance is waived by failure to renew the motion." N.C. Gen. Stat. § 15A-927(a)(2). As a result, by failing to renew his severance motion at the conclusion of all of the evidence, Defendant waived the right to challenge the denial of his severance motion on appeal. *State v. McDonald*, 163 N.C. App. 458, 463-64, 593 S.E.2d 793, 797 (citing *State v. Agubata*, 92 N.C. App. 651, 660-61, 375 S.E.2d 702, 708 (1989)) (stating that "[t]his Court has held that failure to renew a motion to sever

as required by [N.C. Gen. Stat.] § 15A-927(a)(2) waives any right to severance and that on appeal the Court is limited to reviewing whether the trial court abused its discretion in ordering joinder at the time of the trial court's decision to join"), *disc. review denied*, 358 N.C. 548, 599 S.E.2d 910 (2004).

In his brief before this Court, Defendant argues that the record does not show the existence of any transactional connection between the two offenses with which he had been charged sufficient to support the joinder of those offenses for trial. Although the offenses that Defendant was charged with committing are admittedly somewhat dissimilar, an analysis of the other relevant factors demonstrates the existence of the transactional connection necessary to permit joinder of the assault inflicting serious bodily injury and carrying a concealed weapon charges. Only a short period of time elapsed between Defendant's assault upon Mr. Robbins and the discovery of the screwdrivers in Defendant's book bag. In addition, Defendant's assault upon Mr. Robbins led to the search of his book bag and the discovery of the screwdrivers in that location. Had Defendant not assaulted Mr. Robbins, his book bag would have never been discarded, found, and searched. In light of this fact, we are at a loss to understand how the State could have

explained the process that led to the discovery of the screwdrivers in Defendant's book bag without presenting evidence concerning Defendant's assault upon Mr. Robbins. As a result, we have no hesitancy in concluding that the requisite transactional connection existed between the two offenses with which Defendant was charged to permit the joinder of those offenses for trial.

In addition, we are not persuaded that the joinder of the assault inflicting serious bodily injury charge with the carrying a concealed weapon charge for trial raised a serious question "as to 'whether the accused [could have] receive[d] a fair hearing on more than one charge at the same trial,' *i.e.*, whether consolidation 'hinder[ed] or deprive[d] the accused of his ability to present his defense.'" *Montford*, 137 N.C. App. at 498, 529 S.E.2d at 250 (quoting *Silva*, 304 N.C. at 126, 282 S.E.2d at 452). In attempting to persuade us that the joinder of the two charges unfairly hindered his defense and that a renewed severance motion would have been allowed, Defendant points to the State's pretrial statement to the effect that it intended to use the discovery of the screwdrivers to rebut any evidence that Defendant presented, including his contention that he lawfully acted in the defense of another at the time that he assaulted Mr. Robbins. Assuming, without in any way concluding,

that the State intended to use the discovery of the screwdrivers to rebut Defendant's contention that he acted in lawful defense of another, we are unable to see how a decision to sever the trial of the assault inflicting serious bodily injury and carrying a concealed weapon charges would have had any impact on the State's ability to use the discovery of the screwdrivers to rebut Defendant's contention. Instead, the State's ability to use the evidence in question in the manner described in Defendant's brief would have been the same under the applicable evidentiary principles regardless of the extent to which the two charges at issue here were joined for trial or severed. As a result, given that the record does not provide any basis for believing that either the trial court's original joinder decision was incorrect or that anything occurred during the course of Defendant's trial that tends to suggest that a renewed severance motion would have been successful, we conclude that Defendant was not prejudiced by his trial counsel's failure to renew his severance motion as required by N.C. Gen. Stat. § 15A-927(a)(2) and that he is not entitled to relief from the trial court's judgment based upon the ineffective assistance of counsel claim asserted in his brief.

## III. Conclusion

Thus, for the reasons set forth above, we conclude that neither of Defendant's challenges to the trial court's judgment have any merit. As a result, the trial court's judgment should, and thereby does, remain undisturbed.

NO ERROR.

Judges GEER and STEPHENS concur.

Report per Rule 30(e).