STATE OF NORTH CAROLINA v. ANAEL SALINAS VALLADARES

No. COA03-879

(Filed 3 August 2004)

### 1. Evidence— prior bad acts—sale and use of cocaine— intent, knowledge, motive

The admission of testimony mentioning defendant's prior bad acts, including the sale and use of cocaine, was admissible in a prosecution for conspiracy to traffic in cocaine and for trafficking in cocaine by possession. Defendant testified that he never used cocaine and his defense was that he had accompanied a friend without knowledge that the friend was involved in a drug deal; under these circumstances, the testimony was proper to show defendant's intent, knowledge, and motive.

### 2. Evidence— character for truthfulness—not pertinent to cocaine trafficking

Evidence of a defendant's character for truthfulness was correctly excluded as not pertinent to cocaine trafficking.

### 3. Evidence— law abiding person—pertinent—exclusion not prejudicial

Evidence of a cocaine trafficking defendant's character as a law-abiding person tended to establish that defendant did not commit the crime and was incorrectly excluded, but there was no prejudice because the State presented overwhelming evidence of defendant's guilt.

### 4. Evidence— identity of confidential informant—factors favoring nondisclosure

The trial court's refusal to disclose the identity of a confidential informant to a cocaine trafficking defendant was not error

where the factors favoring nondisclosure outweighed the factors favoring disclosure.

## 5. Drugs— cocaine trafficking—weight as element—instruction required

A conviction for trafficking in cocaine by possession was remanded for resentencing for simple possession where the court did not tell the jury that the weight of the cocaine was an element that had to be proven beyond a reasonable doubt.

Appeal by defendant from judgment entered 31 October 2002 by Judge Evelyn W. Hill in Wake County Superior Court. Heard in the Court of Appeals 22 April 2004.

*Attorney General Roy Cooper, by Special Deputy Attorney General Karen E. Long, for the State.*

*Osborn & Tyndall, P.L.L.C., by Amos Granger Tyndall, for defendant appellant.*

McCULLOUGH, Judge.

Defendant Anael Salinas Valladares was arrested and charged with conspiracy to traffic in cocaine and trafficking in cocaine by possession. The State's evidence tended to show that defendant and Joshua Lee Gerrehgy (Gerrehgy) had worked in construction for various employers since 1996. Over time, the two became friends.

Gerrehgy, defendant, defendant's brother, and another friend took a three-day vacation to Ocean City, Maryland, over the Memorial Day weekend in 1998. Defendant arranged for the purchase of a couple of grams of cocaine, and the four men contributed funds to cover the cost. It was the first time Gerrehgy had used cocaine.

After that vacation, Gerrehgy began using cocaine while visiting defendant on the weekend. After getting an alcohol buzz, defendant would call a friend who would sell him a gram or two of cocaine. Then Gerrehgy, defendant, and other friends would pay for the drugs. The group would take the cocaine to a club and use it in the bathroom.

Gerrehgy quit using drugs in August of 1999 after an incident in which he got high, totaled his car, and lost his job. However, Gerrehgy began to use again in 2000 after going to defendant's house. The group drank and sent one of defendant's roommates out to buy

half an ounce of cocaine. The cocaine was fronted which means that the group got the drugs immediately and paid later.

Gerrehgy testified that defendant had a few sources, but he got most of his drugs from Miguel Colon. Gerrehgy began using every Friday night, and he started selling cocaine to help pay for his habit.

Two weeks before the arrest, defendant told Gerrehgy that he wanted to sell cocaine to make money. Gerrehgy agreed to give defendant some customers, and on the day before the arrest, Gerrehgy met a man who wanted to buy some cocaine. Gerrehgy arranged for defendant to meet the man, and defendant delivered a half gram to him later that day. The next day, the same man asked for more cocaine.

Billy Wade also called Gerrehgy looking for an ounce. Gerrehgy and defendant put their money together and made arrangements to pick up an ounce and deliver it to Wade's apartment. Originally, Gerrehgy gave defendant $600 to make the purchase; defendant contributed $200.

On 7 June 2002, Gerrehgy and defendant went to Colon's trailer, and Gerrehgy waited in the living room while defendant went in the back room with Colon to make this first deal. While Gerrehgy was waiting, he received a call from Wade requesting another ounce. Gerrehgy did not have enough money to purchase another ounce, so defendant loaned him another $200, and Colon fronted the rest of the money for two hours while the men made the deal. Defendant and Gerrehgy paid a total of $1,700 for two and one-quarter (2¼) ounces. Two ounces were for Wade, and one-quarter of an ounce was for defendant's deal with the man to whom he had sold drugs the day before. Gerrehgy paid $600, and defendant contributed $400. The men also agreed to pay the remaining $700 to Colon later.

Gerrehgy got a message from Bear telling Gerrehgy to deliver Wade's two ounces to Bear at the Burger King. Gerrehgy had dealt with Bear in the past and trusted him. In fact, Bear was a confidential informant who was working undercover.

Gerrehgy and defendant parked near the dumpster at Burger King to avoid being seen by too many people. Bear got into the vehicle, looked at the cocaine, and said that he would return with the money. When Bear walked away, three or four police cars pulled up and blocked Gerrehgy's car. The police arrested Gerrehgy and defendant.

STATE v. VALLADARES

[165 N.C. App. 598 (2004)]

Wake County ABC agent, Brad Pearson, testified that his informant, Bear, contacted Gerrehgy to make the deal on 7 June 2002. Bear told Pearson that he thought he could purchase two ounces from Gerrehgy, so he called Gerrehgy back and made arrangements to buy the second ounce. Pearson heard Gerrehgy tell Bear that the cocaine would be fronted and that the deal would have to be done quickly.

Pearson contacted agents, Wesley Nipper and Louis Knuckles, and made preparations for the takedown. The plan involved having Bear confirm that Gerrehgy had the cocaine. Then Bear would leave the car, remove his hat, and rub his head as a signal to arrest the suspects.

Nipper was parked about 50 yards from the Burger King and observed Gerrehgy pull into the parking lot. The agents watched as Bear approached Gerrehgy's vehicle. A few minutes later, Knuckles saw Bear give the takedown signal, and he radioed for the others to move in. As defendant and Gerrehgy were taken into custody, Knuckles and Nipper recalled seeing a clear plastic bag containing a white, rocky substance in the backseat of Gerrehgy's car. The bag was located near defendant's leg. Later, it was taken into evidence and determined to be cocaine.

Pearson took defendant into custody and read him his rights. Defendant told him that he spoke English and agreed to talk. Defendant admitted that he had loaned Gerrehgy $400 for the cocaine and expected to get some money back. Defendant also agreed to think about participating in the substantial assistance program.

After being arrested, Gerrehgy told Nipper that defendant loaned him $400 for the purchase and that defendant owed another $700. Gerrehgy also volunteered to participate in the substantial assistance program, but he did not know until a week before trial that he would have to testify against defendant as part of that program.

Defendant testified that he left El Salvador and came to the United States in 1996. He said that he learned English by reading and watching television, but he did not understand all English words. Defendant indicated that he and Gerrehgy worked together in 1996. Initially, the two were not close friends, but they became closer around June of 1997.

Defendant stated that everything Gerrehgy said in his testimony was a lie. Defendant testified that he never used cocaine and never saw Gerrehgy use cocaine.

STATE v. VALLADARES

[165 N.C. App. 598 (2004)]

On June 7, defendant admitted to loaning Gerrehgy $400, but never asked why Gerrehgy needed the money. Defendant thought that the men were going to Gerrehgy's house to drink a few beers. Instead, Gerrehgy took defendant to a trailer on Poole Road. Defendant sat on the sofa while Gerrehgy spoke with some Hispanic men in the back room. Defendant thought Gerrehgy was buying some pot for his own personal use.

The men left and went to Gerrehgy's house. Defendant stated that he did not know that Gerrehgy had any drugs. On the way, Gerrehgy received two phone calls on his cell phone. Gerrehgy said that the first caller was his girlfriend; defendant did not know who the second caller was because Gerrehgy talked too fast, and defendant could not understand what he said.

At Gerrehgy's house, defendant drank a soda while Gerrehgy went into a back room. Gerrehgy told defendant that they were going to Burger King. After arriving at Burger King, Gerrehgy instructed defendant to get in the backseat, but did not explain why. Another guy entered the car and sat in the front seat. Defendant saw Gerrehgy take something out of his pocket before showing it to the man. As the police moved in, Gerrehgy threw the bag in the backseat. After defendant was arrested, he told the officer that he loaned Gerrehgy the money, but never said that it was to purchase drugs.

Rodney Smith and Miguel Cerpas testified that they had known defendant for one to three years and had never seen illegal drugs at defendant's residence.

During the State's rebuttal, Jorge Galeana (Galeana) testified that he had known defendant for about two years. Galeana had been to defendant's house and remembered seeing Gerrehgy there. He had seen cocaine at defendant's house, but not when Gerrehgy was there.

Earlier on the day of the arrest, Galeana recalled that Gerrehgy and defendant had a thirty-five to forty-minute conversation about cocaine. Both men spoke in English. Galeana also testified that defendant asked him if he wanted to sell cocaine, but Galeana turned him down.

Defendant was found guilty of conspiracy to traffic in cocaine and trafficking in cocaine by possession. He was sentenced to 35-42 months in prison.

Defendant appeals. On appeal, defendant argues that the trial court erred by (1) allowing the State to introduce evidence of prior bad acts under Rule 404(b), (2) preventing defendant from presenting evidence of his character for truthfulness and his character as being law-abiding, (3) denying his motion to discover the identity of the confidential informant, and (4) failing to instruct the jury as to each element of the offense of trafficking in cocaine by possession. With regard to the first three assignments of error, we conclude that there was no prejudicial error. Accordingly, the conviction of conspiracy to traffic in cocaine is upheld. However, since the trial court made an instructional error, the charge of trafficking in cocaine by possession is vacated and remanded for resentencing.

## I. 404(b) Evidence

[1] Defendant argues that the trial court erred by admitting portions of Gerrehgy's testimony which mentioned defendant's other bad acts, including using cocaine in the past and selling cocaine on the day before the arrest. We disagree.

Under N.C. Gen. Stat. § 8C-1, Rule 404(b) (2003):

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

"This rule is a general rule of *inclusion* of such evidence, subject to an exception if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *State v. West*, 103 N.C. App. 1, 9, 404 S.E.2d 191, 197 (1991) (emphasis added). We believe that this evidence was not offered for the sole purpose of showing that defendant had the propensity to commit the crimes charged. Instead, it was admitted to demonstrate that defendant had the motive and intent to possess cocaine to sell.

We are also guided by this Court's decision in *State v. Johnson*, 13 N.C. App. 323, 185 S.E.2d 423 (1971), *appeal dismissed*, 281 N.C. 761, 191 S.E.2d 364 (1972). In that case, defendant was charged with possession of marijuana, but denied knowledge of the marijuana or that he had anything to do with it. *Id.* at 324-25, 185 S.E.2d at 424-25.

We allowed evidence which revealed that defendant sold marijuana two weeks earlier and noted that "[i]t was competent for the State to show by the challenged evidence the defendant's intent and guilty knowledge as well as his motives." *Id.* at 325, 185 S.E.2d at 425.

In the case at bar, defendant testified that he never used cocaine and never saw Gerrehgy use cocaine. Additionally, his defense was that he was not involved in buying or selling cocaine and that he accompanied Gerrehgy without knowledge that Gerrehgy was making a drug deal. Under these circumstances, it was proper to allow evidence of the prior drug use and the cocaine sale on the previous day to show defendant's intent, knowledge, and motive. Therefore, this assignment of error is rejected.

## II. Evidence of Defendant's Character

**[2]** Defendant argues that the trial court erred by preventing defendant from introducing evidence of his character for truthfulness and his character as a law-abiding person.

"Rule 404(a) is a general rule of exclusion, prohibiting the introduction of character evidence to prove that a person acted in conformity with that evidence of character." *State v. Bogle*, 324 N.C. 190, 201, 376 S.E.2d 745, 751 (1989). "One of the exceptions to Rule 404(a) permits the accused to offer evidence of a 'pertinent trait of his character' as circumstantial proof of his innocence." *Id.* "In criminal cases, in order to be admissible as a 'pertinent' trait of character, the trait must *bear a special relationship to* or *be involved in* the crime charged." *Id.* With these general principles in mind, we turn to consider whether defendant's character for truthfulness and his character as a law-abiding person were pertinent traits.

Our courts have examined whether the traits of honesty and truthfulness are pertinent in drug cases. In *Bogle*, our Supreme Court explained:

> Truthfulness and honesty are closely related concepts. Webster's Ninth New Collegiate Dictionary defines 'truthful' as 'telling or disposed to tell the truth.' It defines 'honest' as 'free from fraud or deception.' In common usage, a person is 'truthful' if he *speaks* the truth. He is 'honest' if his *conduct*, including his speech, is free from fraud or deception. Neither trafficking by possession nor by transporting marijuana necessarily involves being untruthful or engaging in fraud or deception. Consequently, we hold that the traits of truthfulness and honesty are not 'perti-

nent' character traits to the crime of trafficking in marijuana by possession or transportation.

*Id.* at 202, 376 S.E.2d at 752 (citations omitted). In this case, evidence of defendant's character for truthfulness is not pertinent to the crimes of conspiring to traffic in cocaine and trafficking cocaine by possession. Therefore, the trial court did not err in excluding this evidence.

[3] Our courts have also addressed whether a criminal defendant may introduce evidence of his character as a law-abiding person. In deciding whether a trait is pertinent or relevant, it is well established that "the trait may be general in nature[.]" *State v. Squire*, 321 N.C. 541, 548, 364 S.E.2d 354, 358 (1988). "An example of a character trait of a general nature which is nearly always relevant in a criminal case is the trait of being law-abiding." *Id.* "Evidence of law-abidingness tends to establish circumstantially that defendant did not commit the crime charged." *Bogle*, 324 N.C. at 198, 376 S.E.2d at 749. We conclude that the trait of being law-abiding is pertinent because such evidence would make it less likely that defendant is guilty of conspiracy to traffic in cocaine and trafficking in cocaine by possession.

However, this does not end the analysis. We must consider whether this error prejudiced defendant. Pursuant to N.C. Gen. Stat. § 15A-1443(a) (2003):

A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial[.]

Furthermore, our Supreme Court has indicated that such errors are harmless when there is "overwhelming evidence of defendant's guilt, including his confession." *State v. Collins*, 345 N.C. 170, 174, 478 S.E.2d 191, 194 (1996). In this case, there was not a reasonable possibility that a different result would have been reached, even if the trial court had admitted the evidence. The State presented overwhelming evidence of defendant's guilt, including defendant's own admission of his participation in the crimes charged. This assignment of error is overruled.

### III. Identity of the Confidential Informant

[4] Defendant contends that the trial court erred by denying his motion to learn the identity of the confidential informant. "It is well

established that the [S]tate is privileged to withhold from a defendant the identity of a confidential informant, with certain exceptions." *State v. Newkirk*, 73 N.C. App. 83, 85, 325 S.E.2d 518, 520, *disc. reviews denied*, 313 N.C. 608, 332 S.E.2d 81 (1985). However, if revealing the informant is relevant and helpful to the defense or is necessary to make a fair determination of the case, the trial court may require disclosure. *Id.* at 86, 325 S.E.2d at 520. "Once defendant has made a 'plausible' showing of the materiality of the informer's testimony, the trial court must balance the public's interest with defendant's right to present his case[.]" *Id.* (citations omitted). "Two factors weighing in favor of disclosure are (1) the informer was an actual participant in the crime compared to a mere informant, and (2) the [S]tate's evidence and defendant's evidence contradict on material facts that the informant could clarify[.]" *Id.* (citations omitted). "Several factors vitiating against disclosure are whether the defendant admits culpability, offers no defense on the merits, or the evidence independent of the informer's testimony establishes the accused's guilt. *Id.* at 86, 325 S.E.2d at 520-21.

In this case, the factors favoring nondisclosure outweigh the factors favoring disclosure. Although defendant offered some defense (that he had no knowledge of or involvement with the cocaine), there was plenty of evidence, independent of the informant's testimony, to establish guilt. Gerrehgy testified that he and defendant hatched a plan to buy cocaine to resell. Similarly, Galeana described a conversation in which defendant asked him if he wanted to sell cocaine, too. Finally, and perhaps most importantly, defendant was arrested with drugs in his possession and admitted culpability by telling the arresting officer that he contributed $400 towards the purchase of cocaine with the expectation that he would get money back.

Even if we assume that the confidential informant participated in the commission of the crime, that single factor would not warrant disclosure of the informant. This was not a close case in which the informant's testimony would clarify key differences in the evidence. The State presented substantial evidence, including defendant's own admissions, which tended to show that defendant was guilty of the crimes charged. Because the factors favoring nondisclosure outweighed the factors favoring disclosure, the trial court did not err in denying defendant's motion to learn the informant's identity. This assignment of error is overruled.

IV. Instructional Error

[5] Defendant argues that the trial court erred by failing to instruct the jury on each element of the offense of trafficking in cocaine by possession. The parties agree that the trial court appropriately instructed the jury on the charge of conspiracy to traffic in cocaine. The trial court mentioned all of the elements, including the amount of cocaine at issue (at least 28 grams and less than 200 grams of cocaine). Therefore, this assignment of error is limited to the charge of trafficking in cocaine by possession.

At the outset, we note that defendant failed to preserve this issue by raising an objection at trial. N.C.R. App. P. 10(b)(2) (2004). However, N.C.R. App. P. 10(c)(4) allows plain error review of certain questions that were not properly preserved at trial and are not otherwise deemed preserved by rule of law. Our courts have applied plain error analysis to errors in jury instructions. *State v. Odom*, 307 N.C. 655, 300 S.E.2d 375 (1983). In his assignments of error, defendant properly contends that the trial court committed plain error. Therefore, we will apply plain error analysis to the trial court's jury instruction on this charge.

"A trial judge is required . . . to instruct the jury on the law[.]" *Bogle*, 324 N.C. at 195, 376 S.E.2d at 748. "This includes instruction on elements of the crime." *Id.* "The trial judge has great discretion in the manner in which he charges the jury, but he must explain every essential element of the offense charged." *State v. Young*, 16 N.C. App. 101, 106, 191 S.E.2d 369, 373 (1972). In its brief, the State concedes that the trial court did not charge on the amount of the drugs. Our courts have established that such an omission is erroneous.

In *State v. Gooch*, 307 N.C. 253, 255, 297 S.E.2d 599, 601 (1982), the trial court failed to instruct the jury that it had to find that defendant possessed more than one ounce of marijuana to return a guilty verdict on the charge of possession of over one ounce of marijuana. In *Gooch*:

The trial judge properly referred to the offense as "possessing a quantity of marijuana more than one ounce"; however, the court told the jury in the final mandate that it needed to find only that defendant possessed marijuana to find him guilty of the stated offense.

*Id.* at 256, 297 S.E.2d at 601. Our Supreme Court explained that "[p]ossession of *more than one ounce* is an essential element

of the offense and the trial judge's failure to so charge was error." *Id.*

The case at bar is very similar to *Gooch.* Here, the trial court correctly described the charge as "trafficking in cocaine by possession, which is the unlawful possession of at least 28 grams of cocaine but less than 200 grams of cocaine." However, the trial court never mentioned that the weight of the drugs was one of the elements which had to be proven beyond a reasonable doubt. Therefore, as it did in *Gooch,* the trial court erred in failing to instruct on the amount of drugs.

Defendant contends that this instructional error entitles him to a new trial. We cannot agree. In *Gooch,* our Supreme Court rejected this argument and explained:

> Defendant is not, however, entitled to a new trial. In failing to submit the amount requirement . . . the trial court essentially submitted to the jury the offense of simple possession of marijuana and the jury convicted defendant of that offense.

*Id.* at 257, 297 S.E.2d at 602 (citation omitted). Ultimately, the Court recognized the decision as a guilty verdict of simple possession of marijuana and remanded the case for resentencing. *Id.* at 258, 297 S.E.2d at 602.

We believe that a similar result is warranted in the case at bar. The sole distinction between trafficking in cocaine by possession, N.C. Gen. Stat. § 90-95(h)(3)(a) (2003), and simple possession of cocaine, N.C. Gen. Stat. § 90-95(a)(3), is the amount of drugs. To convict defendant of trafficking in cocaine by possession, the jury would have to find that defendant (1) knowingly possessed cocaine, and (2) in an amount that was 28 grams or more, but less than 200 grams. N.C. Gen. Stat. § 90-95(h)(3)(a). In contrast, defendant could be found guilty of simple possession if he possessed *any* amount of cocaine. N.C. Gen. Stat. § 90-95(a)(3). Thus, by failing to mention the amount requirement, the trial court submitted and the jury found defendant guilty of simple possession of cocaine. As the Supreme Court did in *Gooch,* we remand this portion of the case to the Wake County Superior Court for resentencing as upon a verdict of guilty of simple possession of cocaine.

In summary, we conclude that the trial court did not commit prejudicial error on issues related to defendant's first three assignments of error. Accordingly, the charge of conspiracy to traffic in

cocaine is upheld. However, because of the instructional error, we vacate the trial court's judgment on the trafficking in cocaine by possession charge. This portion of the case is remanded to the trial court for resentencing as upon a verdict of guilty of simple possession of cocaine.

No error in part, vacated in part, and remanded in part for resentencing.

Judges HUDSON and LEVINSON concur.