STATE OF NORTH CAROLINA v. GERALDINE LEWIS RAMOS, Defendant

No. COA07-994

(Filed 18 November 2008)

### 1. Crimes, Other— damaging computer or computer network—willfulness—sufficiency of evidence

The trial court did not err by denying defendant's motion to dismiss the charge of damaging a computer or computer network in violation of N.C.G.S. § 14-455(a), even though defendant contends the State presented insufficient evidence that she acted willfully, because: (1) defendant's argument is based on her own testimony, and it overlooks the fact that only the State's evidence is looked at on appeal from the denial of a motion to dismiss; (2) a defendant's evidence may be considered only if it explains, clarifies, or is not inconsistent with the State's evidence; (3) willfulness involves a state of mind ordinarily proven by circumstantial evidence; and (4) the State presented evidence that when defendant's employment was terminated, she became enraged and her words and her body language were very violent; defendant refused to give back her keys until she got her paycheck which was typically not distributed until the end of the month; the critical files were found missing from the employer's server shortly after defendant had returned from her office; the police discovered the missing files on defendant's flash drive with 80% of them deleted or deleted and overwritten; defendant told the police she would give the files back when she got her paycheck; and defendant admitted at trial that she deleted computer files including curriculum and grant-writing files even though she claimed her boss had given her permission to delete her personal files which she interpreted to include work-related files.

### 2. Crimes, Other— damaging computer or computer network—instructions—willfulness—acting without authorization

The trial court erred by instructing the jury as to the elements of the offense of damaging a computer or computer network under N.C.G.S. § 14-455(a), and defendant is entitled to a new trial, because: (1) the trial court's instruction that defendant acted without authorization did not satisfy the requirement that the jury be instructed as to willfulness when the General Assembly intended to require proof of both willfulness and lack of authorization; (2) the showing that an act was intentional is not

the same as a showing that the act was willful; (3) a jury could reasonably find that defendant intended only to delete files that she believed her boss consented to her deleting, and there is no willful and knowing violation of a statute when defendant believed she had a bona fide right to do so; and (4) a jury could also reasonably believe that any deletion of the files was accidental based on defendant's testimony that she did not intend to delete the TAP files and did not believe she could enter those files while her boss was working on them.

Judge TYSON concurring in part and dissenting in part.

Appeal by defendant from judgment entered 14 December 2006 by Judge Narley L. Cashwell in Wake County Superior Court. Heard in the Court of Appeals 17 January 2008.

*Attorney General Roy Cooper, by Assistant Attorney General Catherine F. Jordan, for the State.*

*Peter Wood for defendant-appellant.*

GEER, Judge.

Defendant Geraldine Lewis Ramos appeals from her conviction of damaging a computer or computer network in violation of N.C. Gen. Stat. § 14-455(a) (2007). In order to obtain a conviction under that statute, the State must prove the defendant acted "willfully." We agree with defendant that the trial court erred by failing to instruct the jury that it was required to determine whether defendant deleted files on the computer willfully. Because there is a reasonable possibility that the jury might have reached a different verdict if properly instructed, we must grant defendant a new trial.

## Facts

The State's evidence tended to show the following facts. Defendant was hired as a community outreach coordinator by the Latin American Resource Center ("LARC") on 15 May 2005. Her supervisor was LARC's director and founder, Aura Camacho-Maas. At that time, LARC had three full-time employees, including Camacho-Maas and defendant, and eight part-time employees. LARC had a computer network with five computers.

One of defendant's responsibilities was to write grant proposals for the organization. One proposal was supposed to be completed by

1 August 2005. On 1 August 2005, however, the proposal was not complete, and defendant and Camacho-Maas had to work until midnight to get the proposal done.

During the week prior to 15 August 2005, Camacho-Maas assigned defendant a second grant proposal due on 15 August 2005. The proposal required defendant to access computer files related to LARC's teacher apprenticeship program ("TAP"). When, on 15 August 2005, the proposal was still not completed, Camacho-Maas and defendant, who were the only employees in the office, had to work on the grant proposal together.

On that same day, Camacho-Maas told defendant that she was being terminated because she was unable to do the work required for her position. When Camacho-Maas asked defendant for her keys to the office, defendant refused to hand them over until she received her paycheck. Camacho-Maas explained to defendant that she would receive her paycheck at the end of the month as usual, and defendant left the building. Camacho-Maas followed defendant and told the receptionist that defendant had been terminated from her job and was not to enter the building without Camacho-Maas being present. The receptionist requested that Camacho-Maas send an e-mail confirming that instruction.

While Camacho-Maas was in her office typing the e-mail, she heard noises in the lobby. When she went to see what was happening, defendant and the receptionist were coming out of defendant's office with drums defendant had brought to LARC for a summer art program. After they left, Camacho-Maas closed the door to defendant's office and went back into her own office.

Moments later, Camacho-Maas realized the receptionist and defendant were again coming out of defendant's office. Camacho-Maas became concerned, went into defendant's office, sat down at defendant's computer, and discovered that the TAP files were missing from LARC's server. Camacho-Maas had seen the TAP files on the server earlier that day before she had terminated defendant's employment. Only LARC employees have access to the TAP files, and Camacho-Maas had not authorized anyone to move or remove the TAP files. Camacho-Maas called the police, and Detective B.R. Williams of the Raleigh Police Department was assigned to investigate the case.

On 16 August 2005, defendant returned to LARC, and Camacho-Maas called Detective Williams. He went to LARC, met defendant, and

told her why he was there. Defendant admitted that she had copied files onto her flash drive. Detective Williams asked defendant to accompany him to the police station so that he could copy the contents of the flash drive. A member of the Raleigh Police Department's cybercrimes unit found approximately 304 LARC files on defendant's flash drive, 80% of which were TAP files that were "either deleted or deleted and overwritten.".

Defendant was charged with damaging a computer system or computer network. On 3 November 2005, defendant pled guilty in district court to damaging a computer. The trial court sentenced defendant to a suspended sentence of 45 days imprisonment and 12 months supervised probation. Defendant appealed to superior court on 7 November 2005.

During the trial in superior court, defendant presented evidence that she had researched and developed a curriculum that cost $5,000.00 to $6,000.00—a curriculum that she knew Camacho-Maas would want. Upon her termination, defendant told Camacho-Maas that she was going to delete her work off the computer. Camacho-Maas responded that defendant's work was not good and, therefore, she did not care if defendant deleted the files. Defendant testified that she never deleted the TAP files, but rather only deleted the research she had done for the curriculum and the part of the grant proposal that she had written. Defendant also testified that Camacho-Maas knew that defendant was deleting files and never said anything about what defendant was doing.

The jury found defendant guilty of damaging a computer system or computer network on 14 December 2006. The court sentenced defendant to a suspended sentence of 45 days and 18 months supervised probation. Defendant was also ordered to pay a fine in the amount of $3,107.50 and to complete 100 hours of community service. Defendant timely appealed to this Court.

I

[1] Defendant first contends that the trial court erred in denying her motion to dismiss. When considering a motion to dismiss, the trial court must determine whether the State presented substantial evidence of each element of the crime and of the defendant's being the perpetrator. *State v. Robinson*, 355 N.C. 320, 336, 561 S.E.2d 245, 255, *cert. denied*, 537 U.S. 1006, 154 L. Ed. 2d 404, 123 S. Ct. 488 (2002). " 'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *State*

*v. Matias,* 354 N.C. 549, 552, 556 S.E.2d 269, 270 (2001) (quoting *State v. Brown,* 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984)). The evidence must be viewed "in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose,* 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994), *cert. denied,* 515 U.S. 1135, 132 L. Ed. 2d 818, 115 S. Ct. 2565 (1995).

N.C. Gen. Stat. § 14-455(a), the offense charged in defendant's indictment, states: "It is unlawful to willfully and without authorization alter, damage, or destroy a computer, computer program, computer system, computer network, or any part thereof." Thus, a violation of this statute requires proof: (1) that the defendant altered, damaged, or destroyed a computer, computer program, computer system, computer network, or any part thereof, (2) that the defendant did so willfully, and (3) without authorization.

In this case, defendant argues only that the State presented insufficient evidence that she acted willfully. She asserts that any files deleted were her own personal property, were deleted with the permission of the director of LARC, or were accidentally deleted. Defendant's argument is, however, based solely on her own testimony. Defendant overlooks the fact that, on appeal from the denial of a motion to dismiss, we look only at the State's evidence. *State v. Barnett,* 141 N.C. App. 378, 382-83, 540 S.E.2d 423, 427 (2000), *appeal dismissed and disc. review denied in part,* 353 N.C. 527, 549 S.E.2d 552, *aff'd per curiam in part,* 354 N.C. 350, 554 S.E.2d 644 (2001). A defendant's evidence may be considered only if it " 'explains, clarifies or is not inconsistent with the State's evidence.' " *Id.* (quoting *State v. Walker,* 332 N.C. 520, 530, 422 S.E.2d 716, 722 (1992), *cert. denied,* 508 U.S. 919, 124 L. Ed. 2d 271, 113 S. Ct. 2364 (1993)).

Because "willfulness" involves a state of mind, " 'ordinarily it must be proved, if proven at all, by circumstantial evidence, that is, by proving facts from which the fact sought to be proven may be reasonably inferred.' " *State v. Alexander,* 337 N.C. 182, 188, 446 S.E.2d 83, 86-87 (1994) (quoting *State v. Ferguson,* 261 N.C. 558, 561, 135 S.E.2d 626, 629 (1964)). In this case, the State presented evidence that when defendant's employment was terminated, she "became enraged" and her "words and her body language were . . . very violent." Defendant also would not give Camacho-Maas her keys without immediately getting her paycheck. After Camacho-Maas explained that she would have to wait until the end of the month for her paycheck, defendant refused to hand over her keys and left.

The critical files were found missing from the LARC server a short while later, after defendant had returned to her office. The police discovered the missing files on defendant's flash drive with 80% of them deleted or deleted and overwritten. When questioned by the police, defendant stated that "she would give Miss Camacho-Maas' files back when she got her paycheck." At trial, defendant admitted deleting LARC computer files, including curriculum files and grant-writing files, although she claimed that Camacho-Maas had given her permission to delete her "personal files," which she interpreted to include work-related files.

This evidence was sufficient to allow a jury to find that defendant deleted computer files willfully. The trial court, therefore, properly denied the motion to dismiss.

II

[2] Defendant next contends the trial court erred in instructing the jury as to the elements of the offense under N.C. Gen. Stat. § 14-455(a). Defense counsel requested in writing the following instruction:

For you to find the defendant guilty you must find that she

1. Willfully, that is intentionally and without an honest belief that there is an excuse or justification for it[,]

2. Without the knowledge or consent of the owner, Latin American Resource Center[,]

3. Damaged, Altered, or Destroyed a computer, computer network, computer program, computer system or part thereof of the Latin American Resource Center[.]

The court denied defense counsel's requested instruction and the court submitted the following instruction to the jury:

The defendant, Geraldine Lewis Ramos, has been charged with the misdemeanor of damaging a compute [sic] system or computer network, or any part thereof.

For you to find the defendant guilty of this offense the State must prove two things:

First, that the defendant damaged a computer system or computer network or any part thereof by deleting a file or files from the computer system or computer network.

Second, that the defendant did so without authorization. A person is without authorization when although the person has the consent or permission of owner [sic] to access a computer system or computer network the person does so in a manner which exceeds the consent or permission.

If you find from the evidence beyond a reasonable doubt that on or about August the 15th, 2005 the defendant, without authorization, damaged a computer system or computer network, it would appeal [sic] your duty to return a verdict of guilty.

Defendant contends that the trial court's instruction was insufficient because it did not instruct the jury that it was required to find that defendant acted willfully.

The State contends that we should review the trial court's instructions to the jury under an abuse of discretion standard. The State has, however, mistakenly lumped all jury instruction issues under one standard of review. Our appellate courts have repeatedly held that "[a] trial judge *is required* by N.C.G.S. § 15A-1231 and N.C.G.S. § 15A-1232 to instruct the jury on the law arising on the evidence. This includes instruction on the elements of the crime." *State v. Bogle*, 324 N.C. 190, 195, 376 S.E.2d 745, 748 (1989) (emphasis added). *See also State v. Gooch*, 307 N.C. 253, 256, 297 S.E.2d 599, 601 (1982) ("The trial court must charge the essential elements of the offense."); *State v. Jarrett*, 137 N.C. App. 256, 265, 527 S.E.2d 693, 699 ("The trial court is required to instruct the jury as to the essential elements of the offense charged and when the court undertakes to define the law, it must do so correctly."), *disc. review denied*, 352 N.C. 152, 544 S.E.2d 233 (2000).

The appellate courts have recognized that a trial judge has discretion in the manner in which he charges the jury, " 'but he *must* explain every essential element of the offense charged.' " *State v. Valladares*, 165 N.C. App. 598, 607, 599 S.E.2d 79, 86 (emphasis added) (quoting *State v. Young*, 16 N.C. App. 101, 106, 191 S.E.2d 369, 373 (1972)), *appeal dismissed and disc. review denied*, 359 N.C. 196, 608 S.E.2d 66 (2004). *See also State v. Holmes*, 120 N.C. App. 54, 71, 460 S.E.2d 915, 925 ("While the court must explain each essential element of the offense charged, the manner in which it chooses to do so is within its discretion."), *disc. review denied*, 342 N.C. 416, 465 S.E.2d 545 (1995). This Court distinguished the aspects of jury instructions subject to discretion from those that are mandatory in *State v. Wallace*, 104 N.C. App. 498, 504, 410 S.E.2d 226, 230 (1991)

(internal citations omitted), *appeal dismissed and disc. review denied*, 331 N.C. 290, 416 S.E.2d 398, *cert. denied*, 506 U.S. 915, 121 L. Ed. 2d 241, 113 S. Ct. 321 (1992):

> In North Carolina, a trial judge is not required to follow any particular form in giving instructions and has wide discretion in presenting the issues to the jury. A judge is not required to state, summarize, or recapitulate the evidence, or to explain the application of the law to the evidence, although he may elect to do so in his discretion. A trial judge must, however, charge every essential element of the offense.

In short, if "willfulness" is an element of an offense under N.C. Gen. Stat. § 14-455(a), then the trial court was required to include "willfulness" in its instructions.

The State does not dispute either that willfulness is an element of N.C. Gen. Stat. § 14-455(a) or that the trial court's instruction failed to instruct the jury that defendant must have acted willfully. The State, however, contends that no error occurred because the trial court instructed the jury that defendant must have acted "without authorization." According to the State, "without authorization" and "willfully" are synonymous concepts. We cannot agree.

Our General Assembly defined "authorization" for purposes of computer-related crimes, including N.C. Gen. Stat. § 14-455(a), as meaning "having the consent or permission of the owner, or of the person licensed or authorized by the owner to grant consent or permission to access a computer, computer system, or computer network in a manner not exceeding the consent or permission." N.C. Gen. Stat. § 14-453(1a) (2007). As a result, a person acts "without authorization" if she accesses a computer without the consent or permission of the owner or in a manner exceeding any consent or permission. On the other hand, " '[w]ilful' as used in criminal statutes means the wrongful doing of an act without justification or excuse, or the commission of an act purposely and deliberately in violation of law." *State v. Arnold*, 264 N.C. 348, 349, 141 S.E.2d 473, 474 (1965). One may act "without authorization," but still not act willfully. For example, a person who accidentally deletes files is not acting willfully, but has deleted the files without authorization.

Consequently, the trial court's instruction that the jury was required to find that defendant acted "without authorization" did not satisfy the requirement that the jury be instructed as to willfulness.

A contrary interpretation of the statute would be inconsistent with established principles of statutory construction:

> "[W]e are guided by the principle of statutory construction that a statute should not be interpreted in a manner which would render any of its words superfluous. We construe each word of a statute to have meaning, where reasonable and consistent with the entire statute, because it is always presumed that the legislature acted with care and deliberation."

*State v. Haddock*, 191 N.C. App. 474, 482, 664 S.E.2d 339, 345 (2008) (quoting *State v. Coffey*, 336 N.C. 412, 417-18, 444 S.E.2d 431, 434 (1994)). The State's contention would require that we view either "willfully" or "without authorization" as redundant or surplusage. A more reasonable construction of the statute—especially given the plain meaning of the words—is that the General Assembly intended to require proof both of willfulness and lack of authorization. *See Porsh Builders, Inc. v. City of Winston-Salem*, 302 N.C. 550, 556, 276 S.E.2d 443, 447 (1981) ("It is presumed that the legislature intended each portion to be given full effect and did not intend any provision to be mere surplusage.").

When a trial court fails to instruct a jury that the State was required to prove willfulness as an element of a crime, the court has erred. *See State v. Maxwell*, 47 N.C. App. 658, 660, 267 S.E.2d 582, 584 (holding that trial court "should have charged on willfulness as an element"), *appeal dismissed and disc. review denied*, 301 N.C. 102, 273 S.E.2d 307 (1980). "Ordinarily, failure to instruct on each element of a crime is prejudicial error requiring a new trial." *State v. Whiteley*, 172 N.C. App. 772, 780, 616 S.E.2d 576, 581 (2005). Nevertheless, a failure to instruct on willfulness may amount to harmless error. *See State v. Rose*, 53 N.C. App. 608, 611, 281 S.E.2d 404, 406 (1981) (finding no prejudice when court failed to instruct jury that defendant's escape from prison must have been willful because "nothing in the record in any way indicates that defendant's escape was anything other than 'willful' "); *Maxwell*, 47 N.C. App. at 660, 267 S.E.2d at 584 (finding no prejudice because "all the evidence shows that if defendant took indecent liberties with the child he did so willfully").

In arguing that defendant was not prejudiced by any error, the State argues that "defendant admitted she deleted LARC's computer files." It is, however, well established that a showing that an act was intentional is not the same as a showing that the act was willful. As this Court explained in *State v. Whittle*, 118 N.C. App. 130, 135, 454

S.E.2d 688, 691 (1995) (quoting *State v. Stephenson*, 218 N.C. 258, 264, 10 S.E.2d 819, 823 (1940)), "[t]he word 'willfully' means 'something more than an intention to commit the offense.' . . . 'It implies committing the offense purposely and designedly in violation of law.' " *See also State v. Clifton*, 152 N.C. 800, 802, 67 S.E. 751, 752 (1910) ("The word willful as used within the meaning of the statute implies something more than a mere voluntary purpose. When used in criminal statutes the word willful means not only designedly, but also with a 'bad purpose.' "); *Glenn-Robinson v. Acker*, 140 N.C. App. 606, 619, 538 S.E.2d 601, 611 (2000) (holding that when statute requires willfulness, word "willfully" means more than intention to commit offense), *appeal dismissed and disc. review denied*, 353 N.C. 372, 547 S.E.2d 811 (2001).

Here, defendant presented evidence that she believed Camacho-Maas had authorized her to delete files amounting to her own work. Defendant testified that, at the time of her termination, defendant told Camacho-Maas, "since my work is no good I guess you won't mind if I take my work off computer [sic]." According to defendant, Camacho-Maas responded, "this was no consequence to her, that the work was not good, and it was no consequence." Defendant testified that Camacho-Maas followed defendant into her office while defendant was deleting the files. Defendant testified Camacho-Maas "didn't say anything, but she knew what I was doing at that time, reason [sic] I walked back down to the room." Defendant claimed that the only files that she deleted were:

[t]he curriculum, research that I had done for the curriculum. I deleted part of the grant which was the grant that I had written. I think that was about three, three files, but it was not the TAP file.

TAP file was in the server. It was a server and, in order for, to go into the server. She had already worked in the server, so I could not [sic] to go into the TAP file.

I would have [sic] go into the server. Server couldn't be but one person going into it at the time, so I don't know.

Based on this testimony, the jury could reasonably find that defendant intended only to delete files that she believed—according to the State, incorrectly—Camacho-Maas had consented to her deleting. As our Supreme Court has held, "[n]either does one 'willfully and knowingly' violate a statute when he does that which he believes he has a *bona fide* right to do." *State v. Fraylon*, 240 N.C. 365, 373, 82

S.E.2d 400, 405 (1954). A jury could further find, based on defendant's testimony that she did not intend to delete the TAP files and did not believe she could enter the TAP files while Camacho-Maas was working on them, that any deletion of the files was accidental. Thus, the record contains evidence that would allow a jury to find that she deleted files without authorization, but not willfully. The trial court's failure to include willfulness in its instructions cannot, therefore, be deemed harmless error.

Accordingly, defendant is entitled to a new trial. Because of our disposition of this appeal, we need not address defendant's remaining contentions.

New trial.

Judge STROUD concurs.

Judge TYSON concurs in part and dissents in part in a separate opinion.

TYSON, Judge concurring in part and dissenting in part.

I fully concur with that portion of the majority's opinion affirming the trial court's denial of Geraldine Lewis Ramos's ("defendant") motion to dismiss based upon the sufficiency of the evidence. Although the trial court failed to instruct the jury that the State was required to prove the element of willfulness, defendant failed to show any prejudice by this omission and is not entitled to a new trial. I disagree with that portion of the majority's opinion granting defendant a new trial based upon the instructions submitted to the jury. I respectfully dissent.

## I. Standard of Review

This Court reviews jury instructions contextually and in its entirety. The charge will be held to be sufficient if "it presents the law of the case in such manner as to leave no reasonable cause to believe the jury was misled or misinformed . . . ." *The party asserting error bears the burden of showing that the jury was misled or that the verdict was affected by [the] instruction. "Under such a standard of review, it is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury."*

*State v. Blizzard*, 169 N.C. App. 285, 296-97, 610 S.E.2d 245, 253 (2005) (quoting *Bass v. Johnson*, 149 N.C. App. 152, 160, 560 S.E.2d 841, 847 (2002)) (emphasis supplied).

## II. Analysis

The majority's opinion holds the trial court committed reversible error and awards defendant a new trial because the trial court failed to instruct the jury that the State was required to prove that defendant "willfully" deleted the files off of LARC's computer network. I disagree.

It is well-established that a trial judge is required to instruct the jury on every essential element of the crime charged. *State v. Mundy*, 265 N.C. 528, 529, 144 S.E.2d 572, 573 (1965); *State v. Hunt*, 339 N.C. 622, 649, 457 S.E.2d 276, 292 (1994). Here, defendant was charged and convicted of a violation of N.C. Gen. Stat. § 14-455, which provides:

> It is unlawful to *willfully and without authorization* alter, damage, or destroy a computer, computer program, computer system, computer network, or any part thereof. A violation of this subsection is a Class G felony if the damage caused by the alteration, damage, or destruction is more than one thousand dollars ($1,000). Any other violation of this subsection is a Class 1 misdemeanor.

N.C. Gen. Stat. § 14-455(a) (2005) (emphasis supplied). The trial court correctly instructed the jury on the element of "without authorization[,]" but failed to instruct the jury on willfulness. Based upon principles of statutory interpretation and contrary to the State's contention, the terms "willfully" and "without authorization" are not interchangeable. *See Lithium Corp. of Am. v. Town of Bessemer City*, 261 N.C. 532, 535, 135 S.E.2d 574, 577 (1964) ("Ordinarily, when the conjunctive "and" connects words, phrases or clauses of a statutory sentence, they are to be considered jointly." (Citation omitted)).

The majority's opinion correctly points out that the failure to instruct the jury on the element of willfulness has been repeatedly held to be harmless error. *See State v. Rose*, 53 N.C. App. 608, 611, 281 S.E.2d 404, 406 (1981); *State v. Maxwell*, 47 N.C. App. 658, 660-61, 267 S.E.2d 582, 584, *disc. rev. denied*, 301 N.C. 102, 273 S.E.2d 307 (1980). Here, our task is to determine whether the trial court's error prejudiced defendant to entitle her to a new trial. *See* N.C. Gen. Stat. § 15A-1443(a) (2005) ("A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States

when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. *The burden of showing such prejudice under this subsection is upon the defendant.*" (Emphasis supplied)).

Although defendant presented evidence tending to show that her supervisor, Aura Camacho-Mass ("Camacho-Mass"), had authorized defendant to delete her personal files from LARC's computer, other overwhelming evidence shows that defendant's actions were unequivocally willful. At trial, Camacho-Mass recounted the events which took place after she had informed defendant of her termination. Camacho-Mass testified defendant "became enraged. Her words and her body language were, were [sic] very violent. And she was crying in my office after she told me many things." Camacho-Mass further testified that defendant stated she "was a fake" and that "she'll destroy me in the agency." Defendant refused to return her office keys and immediately demanded her paycheck. Camacho-Mass informed defendant that she would receive her paycheck at the end of the month. After defendant left the building, Camacho-Mass informed the receptionist that defendant was not to be allowed to re-enter the building without her presence.

Shortly thereafter, Camacho-Mass heard noises outside her office and observed defendant and the receptionist exit defendant's office carrying drums that were used in the agency's summer program. Camacho-Mass testified she refrained from commenting on defendant's presence because she believed the drums belonged to defendant.

Camacho-Mass subsequently observed defendant and the receptionist exit defendant's office a second time and became "really concerned." Camacho-Mass sat down at defendant's computer, opened up the file server, and discovered that all the Teacher Apprenticeship Program ("TAP") files had been deleted from the agency's computer network. Camacho-Mass reported defendant's actions to the police. Camacho-Mass testified that neither defendant nor other personnel had permission to duplicate or remove the TAP files from LARC's network.

Raleigh Police Detective James Neville ("Detective Neville") of the cyber crimes unit, confirmed that 304 files were stored on LARC's flash drive and approximately 80 percent of these files were either deleted or overwritten:

STATE v. RAMOS

[193 N.C. App. 629 (2008)]

The following day, defendant returned to her former workplace and met with Detective B.R. Williams to discuss the missing files. Defendant admitted she had copied the files onto her personal thumb drive "because they [were] her work." However, defendant also stated "she would give Miss Camacho-Mass' files back when she got her paycheck."

The jury also heard additional evidence regarding defendant's actions after this incident occurred. Defendant sent a "very incriminating letter" to all of the board members implying that Camacho-Mass had engaged in "racial behavior" and was misappropriating agency funds. Defendant's demeanor, her threat that she would "destroy" Camacho-Mass, her refusal to surrender her keys after termination, and her repeated returns to her former office after termination, the circumstances surrounding the deletion of the files, and defendant's statement that she had copied the files and would give the files back when "she got her paycheck" unequivocally show defendant's actions in duplicating and removing the files was willful. Based upon the preceding evidence, no reasonable probability exists that a different result would have been reached at trial if the trial court had instructed the jury on the element of willfulness. N.C. Gen. Stat. § 15A-1443.

Defendant has failed to show she was prejudiced by the trial court's jury instructions and is not entitled to a new trial. Because I would hold that defendant is not entitled to a new trial on this issue, I address defendant's remaining assignment of error.

### III. Sentencing

Defendant argues the trial court erred by sentencing her to a "harsher sentence" than she received in the district court.

A sentence within statutory limits is presumed to be regular. Where the record, however, reveals the trial court considered an improper matter in determining the severity of the sentence, the presumption of regularity is overcome. It is improper for the trial court, in sentencing a defendant, to consider the defendant's decision to insist on a jury trial. Where it can be reasonably inferred the sentence imposed on a defendant was based, even in part, on the defendant's insistence on a jury trial, the defendant is entitled to a new sentencing hearing.

*State v. Peterson*, 154 N.C. App. 515, 517, 571 S.E.2d 883, 885 (2002) (internal citation and quotation omitted). In district court, defendant

was sentenced to a suspended sentence of forty-five days imprisonment and was placed on supervised probation for a period of twelve months. Defendant appealed to the superior court and asserted her right to a jury trial.

After the jury had returned a guilty verdict, the superior court imposed a suspended sentence of forty-five days imprisonment and placed defendant on supervised probation for a period of eighteen months. It is undisputed that the suspended sentence defendant received in superior court was authorized by statute, rested in the presumptive range, and was identical to the suspended sentence she received in district court. Before the superior court judge imposed defendant's sentence, he stated:

> I hope that your counsel told you, as he should have, that I am not bound to do what that district court judge did, and likely to do that, because up here we don't do that.

> They generally give minimum sentences down in district court. But any, any [sic] person who appeals a minimum sentence of the district court, thinks [they are] going to get a better result that you got get [sic] from those people is a fool.

> Any lawyer who tells someone to take up an appeal of a minimum sentence out of district court is equally unwise.

Defendant argues the preceding statements are evidence that her sentence was based on irrelevant and improper matters. I disagree. Nothing in the trial court's comments reveals it considered an improper matter in determining the severity of defendant's sentence or referred to her "insistence on a jury trial." *Id.* The trial court imposed the same suspended sentence defendant had received in district court. I vote to overrule this assignment of error.

## IV.  Conclusion

The trial court properly denied defendant's motion to dismiss. The trial court failed to instruct the jury on the element of willfulness contained in N.C. Gen. Stat. § 14-455. However, the totality of the evidence presented at trial shows defendant's actions in copying the files to her personal thumb drive and deleting the files off of LARC's network were unequivocally unlawful and done "willfully" and without authorization. N.C. Gen. Stat. § 15A-1443. Defendant has failed to show she was prejudiced by the trial court's erroneous jury instruction and is not entitled to a new trial.

Nothing in the record supports a reasonable inference that the trial court considered "improper matter[s]" in sentencing defendant or that "the sentence imposed on [] defendant was based, even in part, on [] defendant's insistence on a jury trial[.]" *Peterson*, 154 N.C. App. at 517, 571 S.E.2d at 885. Defendant received a fair trial, free from prejudicial errors she preserved, assigned, and argued. I respectfully dissent.